339 F.2d 364
 The TROY COMPANY, a California corporation, Appellant,
v.
PRODUCTS RESEARCH COMPANY, a Calfornia corporation, Appellee-Cross Appellant,
v.
The TROY COMPANY, a California corporation, Cross Appellee.
 No. 18960.
 United States Court of Appeals Ninth Circuit.
 December 14, 1964.
 Rehearing Denied February 9, 1965.
 
 John B. Young, Lyon & Lyon, Los Angeles, Cal., for appellant.
 C. A. Miketta, William Poms, Guy Porter Smith, Miketta, Glenny, Poms & Smith, Los Angeles, Cal., for appellee.
 Before CHAMBERS, KOELSCH and BROWNING, Circuit Judges.
 KOELSCH, Circuit Judge.
 
 
 1
 Products Research Company, holder of two patents[1] describing buckles commonly employed for automobile safety belts, instituted a patent infringement action against The Troy Company, seeking an injunction and damages. At trial, Troy asserted several defenses, including a denial of infringement, prior use, domestic and foreign, and obviousness of the invention. Four days of trial were consumed and considerable expert testimony was taken. Patent holder prevailed in all particulars. Further, the district court concluded that Troy was merely a nominal defendant, and that Danville Manufacturing Company (maker of the accused device), although not a party to the suit, nonetheless was the party principally responsible for the litigation. The district court ordered an injunction and awarded patent holder compensatory damages, but declined to treble them or assess attorney fees. Both parties appealed. Troy now concedes infringement, but makes numerous specifications of error, principally addressed to the validity of the patents in question. Additionally, it challenges that portion of the findings describing Danville as the principally responsible party. Patent holder takes its cross-appeal from the denial of treble damages and attorney fees.
 
 
 2
 Preliminarily, we observe that Troy fails to specify with particularity wherein the findings are deficient, contrary to the admonition of our Rule 18. Nonetheless, we have carefully examined the record to ascertain the validity of their contentions.
 
 THE LATHROP PATENT
 
 3
 The Lathrop Patent discloses a belt buckle consisting of a metal bucket body bearing a camming face and a metal tongue. The bucket and tongue are attached respectively to either end of a webbed belt. When the tongue is thrust within the buckle body it strikes and depresses the camming face. In turn, a leaf spring positioned above the camming face is depressed, thereby exerting a downward pressure causing the tongue to lock securely when a protuberance on the camming face and an aperture in the tongue coincide. In locked position the protuberance on the camming face extends through the aperture in the tongue into a corresponding aperture in the base plate of the buckle body. The net effect is to distribute tension on the buckle's internal mechanism to the base plate of the buckle body, thereby making belt and base plate as one when put under stress. Thus, no forces operate on the buckle's internal mechanism; rather, it functions merely to attach and release the belt.
 
 
 4
 It is sharply disputed whether the mechanical elements permitting this operation are old in the prior art. But for our purposes, we may assume (without deciding) that they are. For we conclude the elements acting in concert combine to produce a new and useful result, thereby constituting a patentable advance. As put by the Sixth Circuit, "It is established law that all the elements of a combination may be old, * * * [but] if the elements co-acting produce a new and useful result, the combination is patentable." National Latex Products Co. v. Sun Rubber Company, 274 F.2d 224, 239 (6th Cir. 1959). Accord, Coleman Co., Inc. v. Holly Manufacturing Co., 233 F.2d 71, 78-79 (9th Cir. 1956). Here the new and useful result consists of transmitting forces generated from belt tension away from the release mechanism and to the base plate of the buckle assembly itself. Easy release of the buckle in emergency situations is consequently facilitated, and maintenance of a secure union of buckle and belt under stress is enhanced. By separating release functions and load bearing functions, the patented buckle attains a significant advance over the prior art. The earlier art had never satisfactorily attained this result.
 
 
 5
 Nor can it fairly be said the advance was one obvious to a person skilled in the art. Most important, there is not a scintilla of evidence in the record that would support such a conclusion. Further, we think it significant that Danville affixed a patent number, of an earlier but dissimilar patent owned by it, to what is concededly a substantially identical copy of the devices disclosed by the patents in issue. Troy contends, however, that copying is no evidence of invention, citing Sears, Roebuck & Co. v. Stiffel Company, 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed. 2d 661 (1964).
 
 
 6
 That case is wholly inapposite here. There, a manufacturer sought an injunction to prevent the copying of its product on alternative grounds of patent infringement and unfair competition. The district court held the patents invalid for want of invention, but granted the relief requested on the unfair competition ground. The Court of Appeals affirmed. Stiffel Company v. Sears, Roebuck & Company, 313 F.2d 115 (7th Cir. 1963). The question facing the Supreme Court was whether an article unprotected by patent could find parallel protection under the law of unfair competition. Palpably, the Supreme Court reflected no view on whether copying constituted evidence of invention, since invention was not in issue. Without intimating that copying alone establishes invention, we adhere to our view that it is at least some evidence of it. H. J. Heinz Co. v. Cohn, 207 F. 547, 560 (9th Cir. 1913). And this, coupled with the presumption of invention attendant a patent office determination, and sustained by the district court, establish lack of obviousness in the absence of any rebutting evidence.
 
 THE CUMMINGS PATENT
 
 7
 Our consideration of the Cummings patent reveals that it merely improves on the features present in Lathrop. It resembles the Lathrop patent in every particular but one; an elongated slot has been introduced at the pivot point of the release mechanism. The advantage claimed for it is to further facilitate easy release of the catch. It is not necessary to delve deeply into this refinement to perceive that, in any event, the advance is one in degree rather than in kind. And that plainly is not enough to constitute a patentable advance. For Lincoln Engineering Co. of Illinois v. Stewart-Warner Corporation, 303 U.S. 545, 549-550, 58 S.Ct. 662, 664-665, 82 L.Ed. 1008 (1938) teaches us that "* * * [T]he improvement of one part of an old combination gives no right to claim that improvement in combination with other old parts which perform no new function in the combination." Since the advance claimed here concededly performs no different function, but merely improves on the pre-existing Lathrop patent, its status providing patent protection must be stripped away.
 
 
 8
 In the court below, patent holder contended, and the district court found, that Danville, as manufacturer of the accused device, had been in privity with Troy and was principally responsible for the litigation, although not a party to the suit. Troy responds, and we agree, that this necessitates a showing that control was exercised over the litigation by the party alleged to be in privity.
 
 
 9
 Considerable evidence appears in the record on the issue. More is revealed than mere selection and payment of defense counsel by Danville. In addition, it appears that but for Danville's agreement to indemnify Troy, Troy would not even have defended the suit. Moreover, some exhibits in the case were prepared by Danville and all prior art references to be used at the trial were designated by it. Most significantly, settlement negotiations between patent holder and Danville were entered into without the knowledge of Troy. All these indicia, we believe, constitute substantial evidence supporting the trial court's determination. See E. I. Du Pont De Nemours & Co. v. Sylvania Industrial Corporation, 122 F.2d 400, 405 (4th Cir. 1941). Compare Hy-Lo Unit & Metal Products Co. v. Remote Control Manufacturing Co., Inc., 83 F.2d 345, 350 (9th Cir. 1936), and Goodman v. Super Mold Corporation of California, 103 F.2d 474, 482 (9th Cir. 1939).
 
 
 10
 On the cross-appeal, two questions confront us: First, did the district court properly refuse to grant attorney fees to patent holder, as permitted by 35 U.S.C. § 285?[2] Second, did the district court err in its refusal to assess treble damages against Troy, as permitted by 35 U.S.C. § 284?[3]
 
 
 11
 The reason that the district court refused to allow patent holder attorney fees, or to assess punitive damages, is far from clear, although the court did state that "* * * I don't think you can charge to Troy the misdeeds of Danville." Patent holder contends this statement ignores the existence of the indemnity agreement between Troy and Danville providing for Danville's assumption of any damages or attorney fees which may be awarded the patent holder. But in view of the real possibility of a suit against Danville itself, and the concomitant risk of a duplicate award of damages against it, we are unable to say the trial court abused its discretion[4] in confining damage claims to the parties before it.
 
 
 12
 The judgment is affirmed, except insofar as it adjudges the Cummings patent valid and infringed. As to that, it is reversed.
 
 
 
 Notes:
 
 
 [1]
 United States Letters Patent No. 2,846,745 (The Lathrop Patent); United States Letters Patent No. 2,876,516 (The Cummings Patent)
 
 
 [2]
 "§ 285. Attorney fees
 "The court in exceptional cases may award reasonable attorney fees to the prevailing party. July 19, 1952, c. 950, § 1, 66 Stat. 813."
 
 
 [3]
 "§ 284. Damages
 "Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court.
 "When the damages are not found by a jury, the court shall assess them. In either event the court may increase the damages up to three times the amount found or assessed.
 "The court may receive expert testimony as an aid to the determination of damages or of what royalty would be reasonable under the circumstances. July 19, 1952, c. 950, § 1, 66 Stat. 813."
 
 
 [4]
 See Shingle Product Patents v. Gleason, 211 F.2d 437, 441 (9th Cir. 1954). "* * * [T]his court may not interfere with the district court's exercise of discretion `except where there is an abuse of discretion * * * or an erroneous conception * * * on the part of the trial judge.'"
 
 
 
 13
 BROWNING, Circuit Judge (dissenting in part).
 
 
 14
 Validity of the Lathrop patent is based upon a "new and useful result consist[ing] of transmitting forces generated from belt tension away from the release mechanism and to the base plate of the buckle assembly itself." This "new and useful result" is attributed to a combination of (1) the extension of the latch through an aperture in the base of the buckle assembly, found in Dreyfus, French Nos. 774,248 and 791,479, with (2) a spring pressing the latch toward the apertured base.
 
 
 15
 Whether the combination of these two prior art elements constitutes patentable invention is a question of law, the answer to which turns upon whether the two elements when combined take on some "new quality," and result in "unusual and surprising consequences." Great Atl. & Pac. Tea Co. v. Supermarket Equip. Corp., 340 U.S. 147, 152, 71 S.Ct. 127, 95 L.Ed. 162 (1950).
 
 
 16
 There is nothing to indicate that either the latch projecting through the base, or the spring pressing it downward, acted any differently in the combination than out of it; or that the result produced by combination was other than would be expected. The latch abutting against the side of the aperture transmitted the stress to the base, just as it did in Dreyfus; the spring enhanced the effect by pressing the latch toward the base, as would seem inevitable.
 
 
 17
 The record indicates that the combination may have resulted in a minor improvement in performance. But it is not enough to show that a new combination of old elements "produced results more striking, perhaps, than in any previous utilization"; for "scores of progressive ideas in business are not patentable." Great Atl. & Pac. Tea Co. v. Supermarket Equip. Corp., 340 U.S. at 153, 71 S. Ct. at 130.
 
 
 18
 The Lathrop patent does not meet the "severe test" to be applied in determining whether a combination of old elements constitutes invention. Great Atl. & Pac. Tea Co. v. Supermarket Equip. Corp., 340 U.S. at 152, 71 S.Ct. 127.