Frank J. ZAMBONI, dba Frank J. Zamboni & Co., Plaintiff,

v.

M. B. VANDENBERG, dba Ice King Co., Defendant.

No. 63–260–FW.

United States District Court
S. D. California,
Central Division.

Aug. 5, 1965.

Findings of Fact, Conclusions of Law
and Judgment Nov. 30, 1965.

William Douglas Sellers, Pasadena, Cal., for plaintiff.

Boniard I. Brown, West Covina, Cal., for defendant.

### OPINION

WHELAN, District Judge.

This is an action for alleged patent infringement. The Court has jurisdiction under the provisions of 28 U.S.C. § 1338.

Plaintiff holds letters patent No. 2,-642,679 for an ice rink resurfacing machine for smoothing and renewing the surface of the ice in a skating rink after the ice has been cut up and roughened by skaters.

The defendant has manufactured and uses, and has offered to manufacture and sell to others, an ice rink resurfacing machine which plaintiff alleges infringes six claims of plaintiff's patent.

Defendant has brought a counterclaim in which he contends that plaintiff's patent is invalid. Defendant contends inter alia;

(1) that his machine does not infringe plaintiff's patent;

(2) that by the cancellation in the Patent Office proceedings of Claim 12 of the application resulting in the patent in suit, plaintiff is estopped to contend that the claims of the patent are infringed by defendant's machine;

(3) that the claims charged to be infringed do not recite patentable subject matter under the provisions of 35 U.S.C. § 103;

(4) that Claims 3, 6, 7 and 8 are invalid as calling for an aggregation of ice shaving means and water distributing means and that claims of the patent charged to be infringed are invalid as being directed to an old and exhausted combination of ice shaving means and removal means;

(5) that the patent is not valid by virtue of prior art; and

(6) that the patent in suit is invalid by virtue of public use more than one year prior to the filing date of May 16, 1949, under 35 U.S.C. § 102.

### THE PATENT IN SUIT

The patent in suit discloses an ice rink resurfacing machine comprising a motor driven vehicle having a receptacle attached thereto, a frame connected to said vehicle to be towed thereby, same frame resting directly on the ice when said machine is in operation, a sharp-edged blade mounted on said frame generally transverse to the direction of forward travel and disposed to take a light, accurately controlled shaving cut on the ice to remove shallow scratches and surface roughness caused by skate blades, conveyor means driven by the vehicle motor for clearing away the shaved ice from in front of said blade and depositing the ice in the before-mentioned receptacle; and with a water tank attached to the motor-driven vehicle, and means for distributing the water in said tank in a thin film over the surface of the ice behind the blade so as to fill up deep scratches and cavities extending below the cutting edge of the blade and to restore to the ice surface a volume of water approximately equal to the volume of ice removed by the blade, whereby the thickness of the ice after resurfacing is substantially the same as before.

The properties of the machine of plaintiff are set out in detail in Claims 2, 3, 4, 6, 8 and 13 of the patent in suit, which claims defendant is alleged to have infringed.

Plaintiff's machine can be operated by one man. It has means for shaving a specific width of ice by means of an adjustable shaving blade, coextensive in width with a frame which slides on the ice and supports the blade and which also carries a cross conveyor which is just ahead of the blade and removes the shavings as they are made, conveys those shavings to a central point where there is a vertical conveyor which removes the cut ice to the receptacle therefor on the machine. The horizontal conveyor is coextensive in length with the blade and supporting frame. Behind the blade is a water distributing means which by a controlled arrangement spreads the water in a length which is commensurate

with the length or width of the blade. All of these operations are performed substantially simultaneously over a given section of the ice; and the machine is moved progressively around the skating rink until the entire surface has been treated.

Defendant contends that the elements permitting the operation are old in the prior art. The Court is of the opinion that even if this be so, the elements acting in concert combine to produce a new and useful result and some unusual or surprising consequence. Cf. Troy Company v. Products Research Company (CA 9, 1964) 339 F.2d 364 and International Manufacturing Co., Inc. v. Landon, Inc. (CA 9, 1964) 336 F.2d 723.

Prior to the Zamboni machine ice rinks were resurfaced by several independent steps, requiring the labor of three men for about 90 minutes to do the same job done by the Zamboni machine in approximately 15 minutes with the labor of only one man. Furthermore the Zamboni machine reproduces a more smooth, even surface of ice which, because it is not as thick as that reproduced by the old methods, provides greater efficiency in the operation of the refrigeration system of the ice rink maintaining the frozen surface of the ice.

The elements of the machine of plaintiff act in concert to produce the new and useful. The position of the blade behind the conveyor contributes to the efficiency of the conveyor; the shaving blade contributes to the efficiency of the water distributing means; and the water distributing means contributes to an efficient use of the blade. In short, all of these elements co-operate to improve each other's operation and to provide a superior result not previously obtained. Plaintiff's machine attains a significant advance and is a patentable combination. None of the prior art teaches plaintiff's combination, and do not anticipate plaintiff's invention.

 Also it should be observed that the evidence supports the inference that defendant copied plaintiff's machine.

This fact is some evidence of invention by plaintiff. Cf. Troy Company v. Products Research Company, supra, 339 F.2d at p. 367. While there is ample proof of the commercial success of the Zamboni invention, the Court does not base its decision in any way upon such fact.

## RE FILE WRAPPER ESTOPPEL

 Defendant contends that because of plaintiff's cancellation of Claim 12 of his application for patent, plaintiff is estopped to claim that the patented claims of plaintiff are patentable. There is no merit to this contention. Here there was no acceptance of a narrow claim by plaintiff and an attempt by plaintiff to enlarge the scope of the claim. Here patent claim 2 was application claim 2; patent claim 3 was application claim 3; patent claim 6 was application claim 6; patent claim 8 was application claim 8. Cf. International Manufacturing Co., Inc. v. Landon, Inc., (CA 9, 1964) 336 F.2d 723, 727.

## RE PUBLIC USE MORE THAN ONE YEAR PRIOR TO FILING OF PATENT APPLICATION

 There is a conflict of evidence as to whether plaintiff had made public use of his machine more than one year prior to filing his application for patent. While defendant called many witnesses to support his contention of such public use, the Court is not persuaded by them that any public use of the machine within the meaning of Title 35, U.S.C. § 102 (b) did occur. Plaintiff's proof on this point is more convincing to the effect that there was no such public use, and that the only use earlier than one year prior to his filing was for experimental purposes only.

It should also be noted, without going into particulars, that the witnesses called by defendant on this point materially contradicted each other on the question of when plaintiff's first use of his machine occurred; that they were unaware of the stage of development of the machine and that the testimony of several of them was consistent with plaintiff's

claim of experimental use, and use prior to the accomplishment by plaintiff of his invention.

## VALIDITY AND INFRINGEMENT

■ The Court finds plaintiff's patent valid and that Claims 2, 3, 4, 6, 8 and 13 of the patent are valid and are infringed by defendant's machine; and that defendant's infringement has been wilful.

Plaintiff is entitled to a permanent injunction restraining defendant from further infringement.

Plaintiff having waived increased damages for wilful and wanton infringement and attorney's fees, as well as damages for any use by defendant of the latter's machine at the latter's own ice rink, this cause will be kept only for the determination as to whether damages are due plaintiff for any other infringement by defendant.

Counsel for plaintiff shall prepare findings of fact and conclusions of law and judgment in the usual form consistent herewith.

## FINDINGS OF FACT

1. Plaintiff Frank J. Zamboni is an individual doing business as Frank J. Zamboni & Co., is a resident of Paramount, California, and has a principal place of business in Paramount, California, within this judicial district, and is the named inventor in United States Letters Patent 2,642,679 and the owner thereof.

2. Defendant Milo B. Vandenberg is an individual doing business as Ice King Co., is a resident of Upland, California, and has a place of business at 1225 Holt Boulevard, Ontario, California, within this judicial district.

3. Defendant is charged with the infringement of United States Letters Patent 2,642,679 for an "Ice Rink Resurfacing Machine" which issued on June 23, 1953, hereinafter called Zamboni '679.

4. This Court has jurisdiction of the parties and of the subject matter of this cause of action under 28 U.S.C. § 1338

(a) and 28 U.S.C. § 1400(b), and venue herein is proper.

5. The alleged infringing acts took place within this judicial district and the Plaintiff owns United States Letters Patent 2,642,679 in suit.

6. Plaintiff gave to the Defendant written and oral notice of the issuance of the letters patent and of the infringement thereof by the Defendant.

7. The Defendant had made and publicly used a machine alleged to be an infringement of United States Letters Patent 2,642,679 within this judicial district within six years prior to the bringing of this action and has nationally advertised and offered said allegedly infringing machine for sale.

8. Prior to the alleged Zamboni invention disclosed and claimed in United States Letters Patent 2,642,679, the Defendant had no knowledge of an ice resurfacer capable of completely resurfacing an ice surface in one pass.

9. Prior to the Zamboni invention there was no known ice resurfacer which simultaneously acted upon a limited portion of the ice by shaving, removing the shaved ice, and distributing makeup water, and which traveled around the ice so that the entire surface would be serviced in one pass.

10. Prior to engaging in any infringement activity, the Defendant Vandenberg examined the Plaintiff's invention and thereafter began his infringing activity.

11. Prior to making the infringing machine, the Defendant Vandenberg resurfaced the ice at his ice rink in two steps, a first step in which the ice was shaved and the snow removed, requiring two men, and a second step in which water was sprayed on, requiring one man at least.

12. The ice resurfacing machine of the Zamboni patent and the infringing Vandenberg machine perform all the steps of ice resurfacing simultaneously and require only one man for operation.

13. The picture of the Zamboni Machine No. 1 illustrated in Exhibit M

shows that machine in an early stage of its development and before it was perfected.

Photo Exhibit X is an enlargement of Exhibit M, Vol. 1, R. 27, 1.8–15.

14. There was no "public use" of any Zamboni ice resurfacing machine prior to May 16, 1948, and all use of the Zamboni Experimental Models 1, 2 and 3, and Zamboni Machine No. 1 prior to that date was experimental.

15. The use by the inventor Zamboni of his ice resurfacing machine upon the Iceland ice rink in Paramount, California, at all times more than one year prior to May 16, 1949, was intended to be and was experimental, and any saving or profit resulting from such use of the machine was entirely incidental.

16. The Zamboni invention disclosed and claimed in United States Letters Patent 2,642,679 was not in "public use" more than one year prior to the filing date of May 16, 1949.

17. The problems encountered by the inventor Zamboni in developing his machine, and the unavailability of the ice rink for testing purposes most of the time, support Zamboni's position that he pursued the completion of his invention with diligence and there was no public use of the invention more than one year prior to May 16, 1949.

18. The Zamboni invention is broad in view of the prior art which fails to teach the concept of a one-man ice resurfacing machine which will simultaneously shave the ice, remove the shavings, add water to replace the removed ice, fill the cuts, grooves and crevices and lightly coat the shaved surface, and capable of accomplishing the resurfacing of the ice rink in one "pass" thereover.

19. The prior art does not teach the new and novel cooperative relationship disclosed and claimed in the Zamboni patent in which the presence of the shaving blade affects the operation of the conveyor, the presence of the water distributing means affects the operation of the shaving blade, and the presence of the blade affects the operation of the water distributing means.

20. Claims 2, 3, 4, 6, 8 and 13 of Zamboni '679 are readable upon the alleged infringing Vandenberg construction which shows the identical construction called for or the full equivalent thereof.

21. Claims 2, 3, 4, 6, 8 and 13 of Zamboni '679 are infringed by the Defendant's machine illustrated in the drawing identified as Exhibit No. 2.

22. The conveyor means embodied in the Vandenberg construction performs the function of the conveyor means in the combination claimed in Zamboni '679 and is the equivalent thereof.

23. In the Zamboni patented construction it is a conveyor mechanism driven by the vehicle motor which conveys the collected ice and snow to the receptacle, and in the Vandenberg construction it is a suction-creating fan driven by the vehicle motor which is effective to create a flow of air through a conduit leading into the receptacle, the flow of air conducting the adjacent snow through the conduit to the receptacle, the two conveying means accomplishing the same results.

24. The prior art does not teach nor suggest the improved combination disclosed and claimed in the Zamboni '679 patent.

25. The patent to Lewis 92,325, patented in 1869, does not teach an ice resurfacing machine but instead a planer taking a heavy cut of ice to be harvested. It differs from the Zamboni machine in the following respects:

(a) it has no receptacle for receiving shaved ice;

(b) it has no conveyor means;

(c) it has no water-distributing means;

(d) it is not capable of resurfacing an ice rink in one pass or a multiplicity of passes;

(e) it has no frame which normally slides upon the ice carrying an ice-shaving blade and which is

movable vertically with respect to the main frame.

26. The patent to Apple 289,331, issued in 1883, was cited in the Patent Office and is a file wrapper reference and the Zamboni patent is presumptively valid thereover. Apple does not disclose an ice resurfacing machine but instead a snow removal machine. Apple fails to teach the combination taught by Zamboni in that:

(a) it does not have a blade for shaving the ice;

(b) it has no water-distributing means.

27. The patent to Kinsman 445,896, patented in 1891, does not teach a machine capable of resurfacing the ice in one pass and could not resurface ice suitably for skating and instead is an "Ice Harvesting Machine". Kinsman differs from Zamboni in the following material respects:

(a) it does not disclose an ice resurfacing machine;

(b) it does not disclose a frame which rests upon the ice and carries a blade;

(c) it does not disclose a conveyor;

(d) it does not disclose water-distributing means capable of filling grooves in the ice surface below the new level cut by the shaver but instead a primitive receptacle in which snow collects and from which melted snow drains back onto the surface.

28. The patent to Washburn 497,463, issued in 1893, is a file wrapper reference and the Zamboni patent is presumptively valid thereover. It does not disclose an ice resurfacing machine but only a scraper for removing snow from the ice before the ice is harvested. The Washburn scraper differs from the Zamboni invention by many important distinctions including the following:

(a) it is not an ice resurfacing machine but instead a scraper for removing snow;

(b) it is not a motor-driven vehicle;

(c) it does not include conveyor means;

(d) it does not include water-distributing means.

29. The patent to Hourihan 652,311, issued in 1900, is an ice planer of the type used for smoothing the surface of an ice pond prior to cutting into icecakes. It differs from Zamboni in important features including the following:

(a) it is not an ice resurfacing machine;

(b) it does not have a receptacle for ice shavings;

(c) it does not have a conveyor;

(d) it does not have water-distributing means;

(e) it does not have means by which the shaving unit may be raised and lowered to permit its movement to and from the ice.

30. The patent to Linden 825,226, issued in 1906, does not disclose an ice resurfacing machine but instead a snow loading and unloading machine. Linden differs materially from the Zamboni patent in that:

(a) there is no ice shaving blade capable of taking a light shaving cut;

(b) there is no frame resting on the ice and carrying an adjustable blade;

(c) there is no conveyor positioned in front of a blade to move the collected snow;

(d) there is no water distributor;

(e) Linden was never suspected of being an ice resurfacer.

31. The patent to Evans 920,446, issued in 1909, does not disclose an ice resurfacing machine but instead a snow removal machine adapted "for cleaning or scraping the surface of an ice field preparatory to cutting the same * * *." The Evans Ice Scraper differs materially from the Zamboni machine in that:

(a) it is not an ice resurfacing machine;

(b) it does not include a receptacle for snow and ice;

(c) the conveyor is positioned behind and not in front of the scraper blade;

(d) there is no ice shaving blade but instead merely a snow scraping blade;

(e) there is no water-distributing means;

(f) the unit is not capable of resurfacing an ice rink in one pass or in a number of passes.

32. The patent to Carr 1,148,954, issued in 1915, is directed to a "Street and Highway Snow Cleaning Machine", was a file wrapper reference and therefore the Zamboni patent is presumptively valid thereover. It does not disclose an ice resurfacing machine but instead a snow removal machine. It differs materially from the Zamboni invention in many respects including the following:

(a) the plow is not "a sharp-edged blade * * * disposed to take a light, accurately controlled shaving cut on the ice" as in Zamboni;

(b) the conveyor means removes snow from behind the plow, not from in front of it;

(c) there is no receptacle to receive the snow and ice;

(d) there is no water-distributing means;

(e) the Carr machine requires two or more operators; one operator to drive the horses and another to operate the plow, and a third operator if a separate conveyance with a receptacle is used;

(f) there is no concept of how the Carr machine could resurface an ice rink in a single pass.

33. The patent to Whinery 1,191,489, issued in 1916, for a "Street Cleaning or Washing Machine", was a file wrapper reference and accordingly the Zamboni patent in suit is presumptively valid thereover. Whinery does not disclose any of the essential elements of Zamboni's machine and even the water distributor does not function to leave a controlled film of makeup ice on the surface of the ice. It is not an ice resurfacing machine in any sense of the word.

34. The patent to Lloyd 1,556,448, issued in 1925, for a "Road Machine for Snow", is not an ice resurfacer. It differs from the Zamboni invention in the following material aspects:

(a) it is not an ice resurfacing machine;

(b) it is not a motor-driven vehicle;

(c) it has no snow receptacle;

(d) it has no knife-carrying frame supported on ice and vertically movable with respect to the main frame;

(e) there is no suggestion of a sharp-edged blade capable of taking a shaving cut;

(f) it has no conveyor;

(g) it has no water-distributing means;

(h) it cannot resurface an ice rink in one pass or many passes.

35. The patent to Robinson et al. 1,642,895, issued in 1927, for a "Snow Removing Machine" is adapted to remove snow from a runway, melt the snow and dispose of the resulting water. Robinson does show that it is common practice to consider pneumatic tubes as "conveyors" in the art of snow removal and refers to "pneumatically conveying the snow" on page 1, lines 32 and 33, and to "snow conveying conduit D" on page 2, line 84 of the specification. The Robinson snow removing machine differs materially from the Zamboni ice resurfacing machine in the following material respects:

(a) it is not an ice resurfacing machine;

(b) it has no "frame" resting on the ice;

(c) it has no frame raising or lowering means;

(d) it has no shaving blade;

(e) it has no water-distributing means;

(f) it is under no stretch of the imagination capable of resurfac-

ing an ice rink in one pass or in a multiplicity of passes.

36. The patent to Sidella 1,739,331, issued in 1929, for a "Snow Removing Machine" is a file wrapper reference and the patent to Zamboni is presumptively valid thereover. Sidella is not an ice resurfacing machine but instead scoops up snow from the roadway, melts it, then throws the water to the side of the road. It differs materially from the Zamboni invention in that:

(a) there is no "frame" resting upon the ice carrying a shaving blade;

(b) there is no shaving blade;

(c) there is no conveyor to remove shaved ice from in front of the blade;

(d) there is no water distributor adapted to replace the ice removed by the shaving blade and to fill cracks and crevices below the level of the shaved surface.

37. The patent to Thorud 1,762,599, issued in 1930, calls itself a "Combined Sprinkler and Surfacer for Ice Rinks" but actually it is merely a water spreader and snow clearance device without a scraper or shaving blade of any kind whatsoever. The Thorud water spreader differs from the Zamboni ice resurfacer in the following material respects:

(a) it has no ice shaving blade or any means at all to cut the ice;

(b) it has no receptacle to receive snow or shavings cut by a blade or from any other source;

(c) it has no conveyor to carry snow or shavings to a receptacle;

(d) it has no "frame" resting upon the ice carrying a blade capable of vertical movement with respect to the main frame to permit travel over the ground and off the ice;

(e) it is not a motor-driven vehicle;

(f) it requires more than one man and one machine to accomplish a complete resurfacing job and is in fact no more than a tool which carries a flexible water-conducting hose.

38. The patent to Nelson et al. 1,764,084, issued in 1930, for a "Tractor Attachment for Feeding and Elevating Snow" was a file wrapper reference and the Zamboni patent is presumptively valid thereover. The patent discloses a snowplow pivotally mounted on a frame on the tractor. It is not an ice resurfacing machine. It differs from the Zamboni invention in the following material respects:

(a) it is not an ice resurfacing machine;

(b) it does not have a "frame" resting on and supported solely by the ice;

(c) there is no "sharp-edged" blade capable of taking an accurately controlled shaving cut on the ice or any other type of cut;

(d) there is no adjustment between the frame and the blade;

(e) there is no water-distributing means;

(f) the machine is incapable of resurfacing an ice rink in one pass or in a multiplicity of passes.

39. The patent to Bunnell 1,851,301, issued in 1932, is directed to a "Snow Remover", is a file wrapper reference, and the Zamboni patent in suit is presumptively valid thereover. The Bunnell patent does not disclose an ice resurfacing machine but instead a snowplow and a conveyor attachment to feed collected snow into trucks. It differs from Zamboni in the follow material respects:

(a) it has no snow receptacle on the vehicle;

(b) it does not have a frame which rests directly on the ice and which carries a sharp-edged blade;

(c) it incorporates no water-distributing means;

(d) the conveyor is not positioned in front of the blade;

(e) it is not an ice resurfacing machine and could not resurface an ice rink in one pass or a multiplicity of passes.

40. The patent to Marino 2,178,400, issued in 1939, directed to a "Snow Removal Machine", was a file wrapper reference and the Zamboni patent is presumptively valid thereover. Marino teaches a motorized snowplow having conveyors for picking up snow which is carried to a melting tank and therefrom to a conveyor which sprays the melted snow on the street behind the machine where it presumptively runs into a gutter. Marino differs materially from the Zamboni patent in the following respects:

(a) it is not an ice resurfacing machine;

(b) it has no receptacle for carrying "bulk" snow although it does have a tank for melted snow water;

(c) there is no "frame" which rests upon the ice;

(d) there is no sharp-edged blade to take a light, accurately controlled shaving cut of the ice carried by the frame or otherwise;

(e) there is no conveyor for clearing shaved ice from a blade and particularly from in front thereof;

(f) there is no water-distributing means for filling small cracks and crevices in the shaved surface nor for coating the surface shaved by a blade.

41. The patent to Veneziano 2,353,094, issued in 1944, is entitled "Snow Removal Device" and was a file wrapper reference. Accordingly the Zamboni patent is presumptively valid thereover. The construction is a rotary snowplow with a conveyor attached thereto. It is not an ice resurfacing machine. It differs in the following material respects from Zamboni:

(a) there is no "frame" supported solely by the ice and having free vertical movement with respect to the vehicle;

(b) there is no sharp-edged blade capable of taking an accurately controlled shaving cut on the ice;

(c) there is no receptacle for snow collected by the vehicle;

(d) there is no water-distributing means;

(e) the unit is not capable of ice resurfacing in one pass or in any number of passes.

42. The French patent 842,366 to Compagnon, issued in 1939, discloses an apparatus for planing ice and is inoperative to perform a satisfactory ice resurfacing operation. Compagnon differs from the Zamboni invention in the following material respects:

(a) the blade is not mounted on a frame movable with respect to the main frame of the vehicle, but instead its blade is mounted upon the main frame itself;

(b) it does not provide a receptacle for shaved ice mounted on the vehicle but instead two scoops or boxes 37 and 38 which trail along behind and into which the snow is supposed to collect but which actually are incapable of collecting and storing the snow;

(c) it teaches no conveyor means for picking up shavings in front of the scraper blade and conveying it into any collector or receptacle;

(d) it has no water distributor;

(e) it cannot effect resurfacing of an ice rink in one pass or in any number of passes without outside assistance.

43. The German patent to Lemm 329,338, issued in 1919, teaches a machine in which the ice surface is brushed *or* milled by a rotary cutter (illustrated in Figure 7). There is in Lemm no effective air flow creating means to transport snow and shaved ice. Lemm differs from the Zamboni construction in the following material respects:

(a) there is no operative conveyor to convey material from in front of a shaving blade into a receptacle;

(b) there is no "frame" which rests directly upon the ice and which carries a blade;

(c) there is no sharp blade which takes a light shaving cut on the ice;

(d) there is no water-distributing means;

(e) it does not disclose an operative, effective ice resurfacing machine capable of resurfacing an ice surface in one pass.

44. The Swiss patent 131,382, issued in 1929, discloses a rotary milling machine for smoothing the surface of the ice and states that it is contemplated that several efforts would be made in order properly to resurface the ice. By the inventor's own disclosure it is not capable of resurfacing in one pass. This machine differs materially from the Zamboni invention in the following regards:

(a) it has no water-distributing means;

(b) it has no conveyor;

(c) it has no shaving blade;

(d) it has no receptacle for snow and ice.

45. The Zamboni German patent DBP 1,096,261 was filed in Germany on June 15, 1953, more than four years after the filing of the United States application resulting in the patent in suit and only eight days prior to the issuance of the United States patent. The German patent law and the United States patent law are different laws and the disclosure and claims of the German patent are entirely irrelevant to the question of the scope and validity of the United States Letters Patent in suit.

46. The prior art relied upon by the Defendant to teach the Zamboni invention, with the exception of two patents, comprises patents granted between the years 1869 and 1932. Those two exceptions are the patents to Marino granted in 1939 and Veneziano granted in 1944, both of which were file wrapper references before the patent examiner.

47. There was a need prior to the Zamboni invention for an ice resurfacer capable of resurfacing the ice in less time than was required by known methods and with a smooth surface.

48. Despite the need for a machine having the capabilities of the Zamboni invention, and despite the existence of the prior art relied upon by the Defendant, much of which had been available for more than fifty years, there was no machine available to fill the need and to do the job first done by Zamboni.

49. The making of the Zamboni invention was not obvious in view of the prior art in existence on May 16, 1949, when the patent application was filed, or at any time prior thereto.

50. Claims 2, 3, 4, 6, 8 and 13 are not limited by any amendments submitted with respect thereto in order to obtain their allowance in the Patent Office which amendments prevent their reading upon the Vandenberg construction which is the infringement.

51. Claims 2, 3, 4, 6, 8 and 13 find no response in the prior art relied upon by the Defendant, and the claimed structure is importantly and materially different from the prior art patents, taken either singly or in combination, and more than mere "mechanical skill" was required to develop the Zamboni invention recited by those claims.

52. There is a new and novel relationship and cooperation between the ice shaving blade, the conveyor means, and the water-distributing means of the Zamboni patent, which is nowhere suggested in the prior art, which results in a new and improved result not known to or suggested in the prior art at the time the Zamboni invention was made and at no time prior to the application filing date on May 16, 1949.

53. No single prior art patent teaches the novel combination of features disclosed and claimed by the Zamboni '679 patent.

54. The ice resurfacing machine of the Zamboni patent '679 is an improvement of importance over anything disclosed in the prior art upon which the Defendant relies.

55. The Zamboni invention is a commercial success and is widely used in

the United States and in foreign countries.

56. The Defendant wilfully and wantonly infringed the Zamboni patent '679.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction of the subject matter of this action and the parties thereto.

2. Zamboni is the sole inventor of the invention disclosed and claimed in United States Letters Patent 2,642,679, there being no suggestion that anyone other than the patentee Zamboni invented the claimed invention.

3. Frank J. Zamboni is the owner of the entire right, title and interest in and to said patent.

4. The structure disclosed and claimed in Zamboni '679 comprises a new and novel combination having utility which produces a result superior to anything known in the prior art and is a patentable improvement.

5. There is no statutory bar invalidating the Zamboni patent '679; all use of the invention more than one year prior to the application filing date of May 16, 1949, was intended to be and was for purposes of experimentation and development.

6. The fact that the experimentation and development of the Zamboni invention took place in a public skating rink is immaterial for the machine of the invention could only be tested, improved, and developed by use upon the ice which was in public use and any advantage or profit derived from such use of the machine was purely incidental and not the main purpose of its use.

7. Claims 2, 3, 4, 6, 8 and 13 of the Zamboni '679 patent are valid.

8. Claims 2, 3, 4, 6, 8 and 13 of the Zamboni '679 patent are infringed by the Vandenberg machine.

9. There was no estoppel running against the Zamboni patent claims which restricts the scope of said claims as to prevent their infringement by the Vandenberg machine.

10. The Defendant has wilfully and wantonly infringed the patent in suit.

11. This cause shall be referred to a Special Master for the determination of the amount of damages due the Plaintiff from the Defendant.

12. There will be no award of increased damages for wilful and wanton infringement in view of Plaintiff's voluntary waiver thereof.

13. There will be no award of attorney's fees in view of Plaintiff's voluntary waiver of claim thereto.

## JUDGMENT

This cause having come on for trial before Honorable Francis C. Whelan and the issues having been duly tried and the decision rendered, now, in accordance with the Findings of Fact and Conclusions of Law, signed concurrently herewith,

It is ordered and adjudged that:

### I

United States Letters Patent 2,642,679 owned by Frank J. Zamboni, dba Frank J. Zamboni & Co., is valid.

### II

Defendant has infringed claims 2, 3, 4, 6, 8 and 13 of said Patent No. 2,642,-679.

### III

An accounting has been waived by Plaintiff upon the representation under oath by Defendant that he has made only two ice resurfacing machines.

### IV

A perpetual injunction shall issue out of and under the seal of this Court, against said defendant, commanding him, his attorneys, agents, and workmen, and those acting in privity with him, to desist and refrain from making, using, or vending any machine containing the new and useful improvement for which Letters Patent No. 2,642,679 were granted to the said Frank J. Zamboni on June 23, 1953, and from in any manner infringing or violating any of the rights

or privileges granted or secured by said patent.

## V

Defendant shall take nothing by his counterclaim.

## VI

Plaintiff shall have judgment against Defendant for his taxable costs in this action in the amount of $————.