**DEL MAR AVIONICS, a California Corporation, Plaintiff-Appellee,**

v.

**QUINTON INSTRUMENTS COMPANY, a Washington Corporation, Defendant-Appellant.**

**No. 79–4407.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 8, 1980.

Decided May 22, 1981.

Richard W. Seed, Seed, Berry, Vernon & Baynham, Seattle, Wash., for defendant-appellant.

Mario A. Martella, Los Angeles, Cal., for plaintiff-appellee.

Before NELSON and BOOCHEVER, Circuit Judges, and WILLIAMS *, District Judge.

BOOCHEVER, Circuit Judge.

This case involves the applicability of the related doctrines of res judicata and collateral estoppel to a patent infringement suit brought against a manufacturer in the District Court for Seattle, based on a judgment of infringement against a distributor of the same product in the District Court for Los Angeles. Because defendant Quinton Instruments, Inc. ("Quinton") was bound by the Los Angeles court's determination that it controlled the Los Angeles litigation against its distributor Physio-Tronics, Inc. and was thus precluded from relitigating the Los Angeles court's substantive findings on patent validity and infringement, summary judgment in favor of Del Mar Avionics, Inc. ("Del Mar") in the instant action was proper. Furthermore, the trial judge did not abuse his discretion in denying Quinton's requested injunction against enforcement of the Los Angeles injunction.

---

* The Honorable Spencer M. Williams, United States District Judge, Northern California, sitting by designation.

Del Mar brought an infringement action against Physio-Tronics, a California distributor for Quinton, in the United States District Court for the Southern District of California on October 21, 1974 (the "Los Angeles suit"). Although Quinton was not a named party in this action, it contracted to indemnify Physio-Tronics for all costs and liability arising from the litigation. In addition, Quinton selected and paid for the services of an attorney for Physio-Tronics and corresponded with him throughout the trial, often to the exclusion of Physio-Tronics. Quinton also authorized and participated in settlement negotiations, and authorized an appeal from the judgment against Physio-Tronics.

The trial court in the Los Angeles suit determined that the patent was valid and had been infringed by Physio-Tronics and entered judgment in favor of Del Mar on July 7, 1978. The judgment was amended on September 11, 1978 to add an injunction against further infringement. On August 9, 1978, apparently because it believed venue could not be obtained against Quinton in California,[1] Del Mar brought suit for an injunction and damages against Quinton in the United States District Court for the Western District of Washington (the "Seattle suit"), based on the same alleged infringement. In January 1979 the Los Angeles court held a hearing to determine the extent of Quinton's role in the litigation. Quinton participated in the hearing and was represented by counsel. On January 24, the court extended its injunction to include Quinton as well as Physio-Tronics, based on Quinton's "substantial involvement" in the Los Angeles litigation.[2]

Del Mar filed a motion for partial summary judgment in the Seattle suit on the issue of liability, alleging that Quinton was bound by res judicata and collateral estoppel. After the Los Angeles injunction was extended to cover Quinton, Del Mar filed an additional memorandum notifying the Seattle court of this development. Quinton apparently believed that a grant of summary judgment was now inevitable, and submitted a proposed order that no longer contested Del Mar's motion. Quinton instead requested what it termed "safeguards," consisting of an injunction against further enforcement of the Los Angeles judgment.

■ The court below granted Del Mar's motion for partial summary judgment, reserving determination of damages and costs. The court denied Quinton's request for safeguards. In this appeal Quinton contends that its failure to oppose the motion for partial summary judgment was conditioned on the granting of its request for the injunction.[3] Although we find considerable merit to Del Mar's contention that opposition was waived and the issue was not preserved for appeal, the question is sufficiently close that we have elected to address the merits.

## I. RES JUDICATA EFFECT OF THE LOS ANGELES JUDGMENT

The Supreme Court, in the case of *Montana v. United States*, 440 U.S. 147, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979), recently reaffirmed the basic principles applicable to the situation at bar:

> A fundamental precept of common-law adjudication, embodied in the related doctrines of collateral estoppel and res judicata, is that a "right, question or fact

---

1. At time of trial, Quinton apparently did not maintain a "regular and established place of business" in California, as required under the patent venue statute. 28 U.S.C. § 1400(b).

2. Quinton did not appeal the Los Angeles injunction or the infringement verdict itself. Physio-Tronics did appeal and this court has affirmed the infringement judgment in favor of Del Mar. *Del Mar Engineering Laboratories v. Physio-Tronics, Inc.*, 642 F.2d 1167 (9th Cir. 1981).

3. Generally, the grant of a partial summary judgment is not appealable as a final order under 28 U.S.C. § 1291. In patent cases, however, appellate jurisdiction is available under 28 U.S.C. § 1292(a)(4), allowing appeals from "[j]udgments in civil actions for patent infringement which are final except for accounting." *Saf-Gard Products, Inc. v. Service Parts, Inc.*, 532 F.2d 1266, 1268 (9th Cir.), *cert. denied*, 429 U.S. 896, 97 S.Ct. 258, 50 L.Ed.2d 179 (1976).

distinctly put in issue and directly determined by a court of competent jurisdiction ... cannot be disputed in a subsequent suit between the same parties or their privies ...." [citation omitted]. Under res judicata, a final judgment on the merits bars further claims by parties or their privies based on the same cause of action. [citations omitted]. Under collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation ....

These interests are similarly implicated when nonparties assume control over litigation in which they have a direct financial or proprietary interest and then seek to redetermine issues previously resolved.... Preclusion of such nonparties falls under the rubric of collateral estoppel rather than res judicata because the latter doctrine presupposes identity between causes of action. And the cause of action which a nonparty has vicariously asserted differs by definition from that which he subsequently seeks to litigate in his own right.

440 U.S. at 153–54, 99 S.Ct. at 973 (footnote omitted).

In *Montana*, the United States stipulated a number of facts indicating that it had controlled a lawsuit brought by a contractor to invalidate a state tax, so that the Court did not have to resolve any factual questions in finding the control necessary to trigger collateral estoppel. In the instant case, however, Quinton has not so stipulated, and has argued forcefully that its actions with respect to the Los Angeles litigation do not constitute control.

■ Whether a nonparty controlled the earlier litigation is a question of fact for the trial court. *Ransburg Electro-Coating Corp. v. Lansdale Finishers, Inc.*, 484 F.2d 1037, 1038 (3d Cir. 1973). Factors impor-

tant to a finding of control include selection and payment of counsel, payment of litigation expenses, a written indemnification agreement, participation in settlement negotiations, and control over the decision to appeal. *TRW, Inc. v. Ellipse Corp.*, 495 F.2d 314, 318 (7th Cir. 1974); *Troy Company v. Products Research Company*, 339 F.2d 364, 367 (9th Cir. 1964). Quinton presented extensive factual argument in the Seattle court to the effect that it did not meet these factors, and did not occupy the close relationship to the Los Angeles litigation under which collateral estoppel principles would apply. So long as the January 1979 order stood unchallenged, however, Quinton was bound by res judicata on the finding that Quinton had "substantial control" over the Los Angeles litigation, and could not controvert that finding in Seattle. Given Quinton's control of the Los Angeles litigation, collateral estopped applied as to the issues determined in that litigation. Quinton's liability to Del Mar in the Seattle suit was thus properly established by summary judgment. Fed.R.Civ.P. 56; *Ransburg*, 484 F.2d at 1039.

Quinton of course could have directly challenged the validity of the Los Angeles finding of litigation control by appealing the extension of the injunction. Having failed to do so, Quinton may not relitigate the issue in the Seattle court, because it is bound by res judicata. We note that Quinton will be ultimately liable via its indemnification agreement for the damages paid by Physio-Tronics. However, Del Mar concedes that it is not entitled to double recovery and we assume that the Seattle court will insure that there is no duplication in any damages that may be awarded.

## II. DENIAL OF SAFEGUARDS

■ Quinton contends that by filing two suits and relying on the first to establish liability in the second, Del Mar is harassing Quinton.[4] Therefore it claims to be

---

4. Del Mar challenges the appealability of the lower court denial, contending that the requested injunction was in effect a protective order

"unrelated to the substantive issues of the litigation ...", and therefore denial was a non-appealable interlocutory order. *Siebert v. Great*

entitled to injunctive relief against any further contempt or accounting proceedings in the Los Angeles suit. Quinton argues that the lower court abused its discretion by denying the safeguards.[5] Although federal trial courts have the power to enjoin other proceedings, the decision to enjoin rests in the sound discretion of the trial judge, and will rarely be overturned. *Small v. Wageman*, 291 F.2d 734, 736 (1st Cir. 1961); *Solex Laboratories, Inc. v. Butterfield*, 202 F.Supp. 461, 463 (D.Or.1961).

Furthermore, this court has held that as a matter of comity, a federal court injunction against proceedings in another federal court will rarely be granted, especially when the courts are within the same circuit. *Bergh v. State of Washington*, 535 F.2d 505, 507 (9th Cir.), *cert. denied*, 429 U.S. 921, 97 S.Ct. 318, 50 L.Ed.2d 288 (1976). We find no abuse of discretion, and affirm the district court's denial of Quinton's requested safeguards.

For the foregoing reasons, the judgment of the district court is AFFIRMED.

---

*Northern Development Co.*, 494 F.2d 510, 511 (5th Cir. 1974). We do not need to decide whether the *Siebert* rationale applies, because the trial court denial was part of its final judgment, and direct appeal is proper under 28 U.S.C. § 1291.

**5.** Quinton contends that the equities weigh in its favor because of Del Mar's "seesawing" litigation. However, Del Mar filed suit against a proper defendant with proper venue in both the Los Angeles and Seattle suits. 28 U.S.C. § 1400(b). Quinton could have acted to simplify this litigation at an earlier stage, either by entering the Los Angeles suit as a party, or by bringing a declaratory judgment action on patent validity in Seattle. *William Gluckin & Co. v. International Playtex Corp.*, 407 F.2d 177, 178 (2d Cir. 1969). Instead Quinton chose to remain behind the scenes until the outcome in Los Angeles was certain.