**RANSBURG ELECTRO–COATING CORP., Plaintiff,**

v.

**LANSDALE FINISHERS, INC. and Automatic Finishing Systems, Inc., Defendants.**

Civ. A. No. 68–1320.

United States District Court,
E. D. Pennsylvania,
Civil Division.

June 21, 1972.

John T. Synnestvedt, Philadelphia, Pa., Clyde F. Willian, Chicago, Ill., for plaintiff.

Edward L. Jackson, Philadelphia, Pa., for defendants.

## OPINION

DITTER, District Judge.

This is a patent infringement matter which comes before the court on cross motions for summary judgment. The principal question is whether one of the defendants in this case, although not a party to a prior suit, exercised sufficient control over the way it was handled to be bound by an adverse judgment under the res judicata doctrine.

Plaintiff, Ransburg Electro-Coating Corp., brought this action to enjoin the infringement of four patents which cover methods and apparatus using electrostatic forces in a spray-painting device. It is charged that Automatic Finishing Systems, Inc., hereafter AFS, manufactured the accused system and sold one of them, or at least the essential components, to Lansdale Finishers, Inc. Plaintiff contends that AFS should be bound by the findings of fact, conclusions of law, and judgments entered in Ransburg Electro-Coating Corp. v. Standard Container Co., 167 U.S.P.Q. 426 (M.D.Ga.1970), because:

(1) AFS controlled the defense in *Standard* and is therefore bound by that decision;

(2) Lansdale has completely delegated all matters of defense in the instant action to AFS;

(3) The court in *Standard* adjudged valid and infringed the same patents involved in the instant case;

(4) The accused electrostatic spray painting system in *Standard* and in this action are the same in all material respects.

█ The first matter for consideration is whether the participation of AFS in *Standard* amounted to a control of the defense in that case. If so, and if the accused systems are the same, AFS will be bound here by that decision: Schnell v. Peter Eckrich & Sons, Inc., 365 U.S. 260, 262, 81 S.Ct. 557, 559, 5 L.Ed.2d 546 (1961); Caterpillar Tractor Co. v. International Harvester Co., 120 F.2d 82 (3rd Cir. 1941).

The Honorable William A. Bootle, Chief Judge, before whom *Standard* was tried, was aware of the present suit against AFS. Accordingly, he made certain specific findings concerning the participation by AFS in the suit against *Standard,* including the following:

(1) AFS had "actively and openly assisted in the defense of this action";

(2) AFS agreed with Standard that AFS would pay all litigation costs in the present action including the fees of an expert witness, Dr. Kosko, and any damages which may be assessed against defendant;

(3) Standard's trial counsel, Dana Raymond, had also been retained by AFS to defend an action brought by Ransburg against AFS in Philadelphia [the instant action], and AFS had agreed to pay his fee in both cases;

(4) No officer or employee of Standard appeared as a witness or attended the trial of the case, but the president of AFS, Gallen, and one of its key employees, Munroe, were daily present in court, while an AFS vice president, Lanchak, attended portions of the trial;

(5) The tests used to develop much of Standard's evidence were conducted at Lanchak's place of business in New Jersey, and no employee or officer of Standard was present at the tests;

(6) Ransburg's interrogatories and requests for admissions were never submitted to Standard for consideration because Standard's counsel knew that Standard had no information relating to them; rather draft responses were prepared by trial counsel and submitted to Gallen and Munroe for their opinion, after which they were signed by trial counsel; and

(7) The accused system, which was purchased from AFS in 1965, was used by Standard in New Jersey for approximately three months and in Homerville, Georgia, for one, possibly two, seasons. Standard's stake in this action is less than that of AFS. At one time defendant Standard's counsel indicated that AFS might attempt to intervene, but such attempt did not materialize.

Chief Judge Bootle refrained from concluding that the defense in *Standard* was actually controlled by AFS. He reasoned such a finding would not be binding upon any other court which might be faced with the question and stated, "It is better to leave such court

untrammeled. Such court before whom res judicata or collateral estoppel is urged may be in a better position then this court to make a correct finding on this question because it may have the benefit of additional facts."

As he foresaw, more information has become available about the participation of AFS in Standard's defense. In deposition, Standard's president, William M. Vogel, Jr., testified his company did not want to be involved in the litigation with Ransburg (page 16). The matter was not of great interest to Standard (page 20), which was no longer using the equipment in question and had no intention of doing so (page 30). There was no day-to-day effort to be advised about the litigation (page 10). After Chief Judge Bootle's decision was rendered, Vogel was not sufficiently concerned to study it or really look it over, and was uncertain as to whether he had received a copy or not (page 9). Vogel said, however, that he and his company had no objection to the suit's being defended by AFS so long as it was understood that Standard would not pay any of the costs involved. None of the invoices rendered by defense counsel were sent to Standard nor was the bill of an expert who appeared on Standard's behalf. Apparently these were sent directly to AFS. Vogel's deposition and that of Gerald Kaye, Standard's executive vice president, show that Standard's only contact with the litigation was to seek counsel and then direct settlement when AFS no longer would pay the necessary expenses. Vogel was even somewhat vague about whether Dana Raymond, Esquire, the attorney in question, represented Standard or AFS. At one point he said that Raymond represented AFS, but then said that since the suit was against Standard, "I guess he was representing us." (page 16)

Mr. Raymond, a New York patent attorney, was trial counsel for Standard in Ransburg's suit. He had previously represented Standard in another patent case. Although he considered himself to be Standard's attorney, his consultations were with AFS, AFS helped him with the preparation of the defense, and AFS was the source of funds for all payments.

Lansdale's position in the instant case is much like Standard's was in the suit against it. Lansdale has no interest in the litigation and expects AFS to pay for all matters of defense including any damages assessed against it.

The degree of effective dominion exercised by AFS in the Standard case is demonstrated by the fact that no appeal was perfected because AFS was unable or unwilling to provide the necessary funds. When this became apparent to Standard and Mr. Raymond, the litigation abruptly terminated. Far more than any single factor, this shows that absolute control and command rested with AFS.

In Troy Company v. Products Research Company, 339 F.2d 364 (9th Cir. 1964), consideration is given to the elements that indicate the exercise of control in a patent infringement case. Specific reference is made to the payment of defense counsel, an agreement to pay all of the fees and costs to defend the matter, and assistance rendered to counsel in the preparation of the defense. All of those elements are present in the instant suit and many more. A review of Chief Judge Bootle's findings, the depositions of Vogel and Kaye, and the affidavit of Dana Raymond make it quite apparent that control in the suit against Standard was exercised by AFS.

The second matter for consideration is whether the accused system in the Standard suit is the same as that in the instant case.

■ Plaintiff's four patents, Nos. 2,685,536, 2,794,417, 2,893,893, and 2,893,894 cover painting systems which utilize electrostatic forces. Paint is supplied to three bell-shaped atomizers which are rotated during operation. This rotation causes the paint to form a thin film which is then atomized into fine particles. A strong electrostatic charge on each of the particles attracts

them to the terminus of the electrostatic field, the article to be painted. The inventions have been commercially successful, and plaintiff has licensed numerous companies to use its processes. The accused system manufactured by AFS is basically the same as that manufactured by plaintiff. The only difference is that in plaintiff's system, the electrostatic field is established by charging the atomizer and grounding the article to be painted. In the accused system, the field is established by charging the article to be painted and grounding the atomizer. The difference is immaterial since the plaintiff's patents expressly recognize that either the atomizer or the article to be painted may be charged. Chief Judge Bootle found this difference to be of no significance in the *Standard* case [1] and I agree with his finding.

AFS manufactured the system that had been purchased by Standard and in addition, manufactured the system purchased by Lansdale. Thomas J. Gallen, president of AFS, testified that the atomizers employed on the system sold to Lansdale are of the same type which had been used in that sold to Standard. He also said that the electrostatic charge was effectuated in the same way in both systems. I conclude therefore that the devices and methods which were subjects of the *Standard* case and which are the subject of the instant case are identical for all practical purposes.

■ The Court in *Standard* concluded as a matter of law that patent numbers 2,685,536, 2,794,417, 2,893,893, and 2,893,894 were valid and enforceable in all respects. In light of the fact that AFS controlled the defense in *Standard* and because the systems and the patents in both cases are identical, the judgment rendered in Ransburg Electro-Coating Corp. v. Standard Container Co., supra,

is res judicata, and the defendant, AFS, is bound by that determination.

■ Since the defendant, Lansdale, was not a party to the *Standard* suit, the judgment in that case cannot be res judicata to it. Lansdale is entitled to its day in court and has not had it. Consequently, plaintiff's motion for summary judgment against Lansdale will be refused.

Based upon the Findings of Fact, Conclusions of Law, Interlocutory Judgment, and Final Judgment entered by the District Court for the Middle District of Georgia in the litigation entitled Ransburg Electro-Coating Corp. v. Standard Container Company, 167 U.S. P.Q. 426 (M.D.Ga.1970), and the pleadings, depositions, deposition exhibits, and responses to plaintiff's requests for admissions in the instant case, I make the following:

## CONCLUSIONS OF LAW

1. This Court has jurisdiction of the parties and of the subject matter of this action, 28 U.S.C. § 1338(a), and venue, is properly laid in this District, 28 U.S. C. § 1400(b).

2. United States Patents No. 2,685,536, No. 2,794,417, No. 2,893,893, and No. 2,893,894 were each duly and lawfully issued, each is owned by plaintiff, and plaintiff has standing to sue to recover for past infringement and to enjoin future infringement thereof.

3. Automatic Finishing Systems, Inc., is a proper party defendant in this action and is bound by the judgment and all orders herein.

4. Lansdale Finishers, Inc., is a proper party defendant in this action and is bound by the judgment and all orders herein which pertain specifically to it.

---

1. "78. This Court finds that the fact that the accused system employs a grounded head and articles at high voltage, in contrast to the high voltage head and grounded articles of Ransburg's commercially used No. 2 system, is likewise of no consequence in determining infringement

. . . None of the four patents in suit precludes the use of a grounded head as in the accused system and indeed [three of them] . . . specifically state that either the head or the article may be grounded. . . ."

5. Automatic Finishing Systems, Inc. controlled the defense of the litigation entitled Ransburg Electro-Coating Corp. v. Standard Container Company, 167 U.S.P.Q. 426 (M.D.Ga.1970) and is therefore bound by the Findings of Fact and Conclusions of Law entered on March 27, 1970, the Interlocutory Judgment entered on April 20, 1970, and Final Judgment entered on January 5, 1971, in that case.

6. Automatic Finishing Systems, Inc., has openly controlled the defense of this litigation with the consent of Lansdale Finishers, Inc.

7. The specification and claims of each of the patents in suit comply fully with the requirements of 35 U.S.C. § 112.

■ 8. United States Letters Patent No. 2,685,536 entitled "Method of Electrostatically Coating Articles", as to Claims 1 to 11, inclusive, is in all respects valid.

■ 9. United States Letters Patent No. 2,794,417 entitled "Apparatus for Electrostatically Coating Articles", as to Claims 3 and 4 is in all respects valid.

■ 10. United States Letters Patent No. 2,893,893 entitled "Method and Apparatus for Electrostatic Coating", as to claims 1, 2, 3, 5, 6, 7, 9, and 10 is in all respects valid.

■ 11. United States Letters Patent No. 2,893,894 entitled "Method and Apparatus for Electrostatic Coating", as to claims 1 to 8, inclusive, is in all respects valid.

12. The manufacture, use, and sale of the accused system by AFS meets every requirement of each claim of United States Letters Patent No. 2,685,536, and thereby directly infringes that patent.

13. The accused system meets every requirement of claims 3 and 4 of United States Patent No. 2,794,417, and manufacture, use and sale by AFS of apparatus of that system thereby directly infringes that patent.

14. The accused system meets every requirement of claims 9 and 10 of United States Patent No. 2,893,893, and manufacture, use and sale by AFS of apparatus of that system thereby directly infringes that patent.

15. The manufacture, use, and sale of the accused system by AFS meets every requirement of claims 1, 2, 3, 5, 6, and 7 of United States Patent No. 2,893,893, and thereby directly infringes that patent.

16. The accused system meets every requirement of claims 7 and 8 of United States Patent No. 2,893,894, and the manufacture, use, and sale by AFS of apparatus of that system thereby directly infringes that patent.

17. Use of the accused system by AFS meets every requirement of claims 1 through 6 of United States Patent No. 2,893,894, and thereby directly infringes that patent, 35 U.S.C. § 271(a).

18. Automatic Finishing Systems, Inc., has actively induced infringement of the patents in suit by its manufacture and sale of atomizer apparatus and other components to Lansdale Finishers, Inc., for use in the accused system.

■ 19. Automatic Finishing Systems, Inc., has contributed to infringement of the patents in suit by selling to Standard Container Company and to Lansdale Finishers, Inc., for use in the accused system, atomizer apparatus which are not staple articles of commerce suitable for substantial noninfringing use.

20. Plaintiff is entitled to an accounting against Automatic Finishing Systems, Inc., to determine the amount of its damages.

### ORDER

For the reasons set forth in the foregoing opinion, and based upon the above

conclusions of law, it is hereby ordered, adjudged, and decreed:

(1) Plaintiff's motion for summary judgment is granted as to Automatic Finishing Systems, Inc., and is hereby denied as to Lansdale Finishers, Inc.

(2) Defendant, Automatic Finishing Systems, Inc., and its officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise, and each of them is enjoined from the infringement of United States Letters Patent No. 2,685,536, No. 2,794,417, No. 2,893,893, and No. 2,893,894, or any of them, throughout the respective lives of the aforesaid Letters Patent.

(3) Plaintiff is entitled to an accounting against Automatic Finishing Systems, Inc., to determine the amount of its damages.

(4) The Court retains jurisdiction of the action as to the accounting to determine the amount of the damages, but the commencement of the accounting is deferred until after the time for appeal has expired, if no appeal is taken, or until after the return of the mandate from the Court of Appeals if an appeal should be taken.

(5) After the time for appeal has expired, if no appeal is taken, or after the return of the mandate from the Court of Appeals, if an appeal should be taken, Automatic Finishing Systems, Inc., and its officers, directors, attorneys, servants, agents, and employees are hereby directed to produce, as requested, such devices, objects, records, and accounts as are relevant to an accounting, and, upon due notice, to submit to examination, oral or otherwise.

(6) Plaintiff is entitled to an award of ordinary costs against Automatic Finishing Systems, Inc.

(7) The Court also retains jurisdiction for a hearing on the merits as to Lansdale Finishers, Inc.