**RANSBURG ELECTRO-COATING CORP.**

v.

**LANSDALE FINISHERS, INC. and Automatic Finishing Systems, Inc.**

**Appeal of AUTOMATIC FINISHING SYSTEMS, INC.**

No. 72-1975.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) July 25, 1973.

Resubmitted Under Third Circuit Rule 12(6)

Sept. 4, 1973.

Joseph Gray Jackson, Edward Lovett Jackson, Eugene Chovanes, Jackson, Jackson & Chovanes, Philadelphia, Pa., for appellant.

John T. Synnestvedt, J. Donald McCarthy, Synnestvedt & Lechner, Philadelphia, Pa., and Clyde F. Willian, Robert L. Harmon, Hume, Clement, Hume & Lee, Brinks, Willian, Olds & Cook, Ltd., Chicago, Ill., for appellees.

Submitted Under Third Circuit Rule 12(6) July 25, 1973

Before SEITZ, Chief Judge, and ALDISERT, Circuit Judge.

Resubmitted Under Third Circuit Rule 12(6) Sept. 4, 1973

Before SEITZ, Chief Judge, and ALDISERT and HUNTER, Circuit Judges.

## OPINION OF THE COURT

PER CURIAM.

The question presented is whether on a motion for summary judgment the district court, 345 F.Supp. 299, properly decided the question of non-party control of a previous patent infringement litigation. The court found that there had been non-party control of the litigation and invoked *res judicata* to decide a subsequent action pertaining to the same patent. We reverse and hold that the question of control of the previous litigation was for the court as a fact-finder.

The district court had before it an action by Ransburg against Automatic Finishing Systems (AFS) and Lansdale, a customer of AFS. It determined that AFS had controlled the defense of a previous infringement action brought in Georgia by Ransburg against Standard Container, also a customer of AFS. The court invoked the doctrine of *res judicata* against AFS and entered summary judgment in favor of Ransburg. It permitted the action to proceed to trial against the co-defendant Lansdale only.

■ We have jurisdiction in this appeal even though the summary judgment was not a final judgment as to all parties. F.R.Civ.Proc. 54(b) does not affect the appealability of orders "granting . . . injunctions," 28 U. S.C. § 1292(a)(1). Rains v. Cascade Indus., Inc., 402 F.2d 241, 243 (3d Cir. 1968).

■ It is well established that an appellate court will "look at the record on summary judgment in the light most favorable to . . . the party opposing the motion. . . ." Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed. 2d 458 (1962). "The sufficiency of a non-party's control and participation in litigation is, . . ., a question of fact, to be proved affirmatively by the party invoking the conclusive force of the judgment." 1B Moore, Federal Practice ¶ 0.411[6] at 1566–67, Standard Acc. Ins. Co. v. Doiron, 170 F.2d 206, 209 (1st Cir. 1948). We are obliged, therefore, to ascertain whether the issue of AFS control over the previous litigation was sufficiently contro-

verted as to require its resolution by the fact-finder.

The question of control is pertinent to controlling legal principles, exemplified by the Restatement of Judgments, § 84:

> A person who is not a party but who controls an action, individually or in co-operation with others, is bound by the adjudications of litigated matters as if he were a party if he has a proprietary or financial interest in the judgment or in the determination of a question of fact or of a question of law with reference to the same subject matter or transaction; if the other party has notice of his participation, the other party is equally bound.

■ Although the evidence adduced in the summary judgment proceedings seems heavily weighted in favor of Ransburg,[1] preponderance of the evidence is not the test in a summary judgment proceeding; rather the test is whether a genuine issue of material fact remains after examination of pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits. AFS argues that certain aspects of the conduct of Standard's litigation counsel in Georgia demonstrated an independence of trial strategy beyond the control of AFS.[2]

■ After examination of the record, we are persuaded that the control issue

1. Ransburg relies upon evidence that the accused electrostatic spray system in the Standard case was purchased by Standard from AFS; Standard was not using and had no intention of using the accused system, it refused to become involved in the litigation with Ransburg and told AFS if it wanted to "take care of the litigation" Standard had no objection; Standard refused to pay any of the financial cost of the defense and AFS agreed to take care of all costs; AFS did "take care of the trial" and preparation for trial; and AFS either refused or was unable to give its "assurances" that it could or would be responsible for the appeal, as a result of which Standard terminated the appeal and the district court determination became final.

Additionally, Ransburg emphasizes that while officers and employees of AFS appeared as witnesses in the Standard suit and attended regularly, no one from Standard appeared and that AFS retained the same defense counsel to represent it in another infringement suit filed by Ransburg against AFS.

2. AFS relies on separate evidence to draw a different inference from the Ransburg evidence. AFS contends that Standard and AFS could have been sued jointly in New Jersey; that electing to pursue Standard alone in Georgia, Ransburg in a sense forfeited any right to bind AFS by that litigation. AFS emphasizes that the trial attorney for Standard was known to Standard, had been used by Standard in a suit prior to the Ransburg-Standard litigation, and was retained by Standard before AFS agreed to pay the costs of the Standard defense. AFS explains the presence of its personnel at the Standard trial and their assistance in the

preparation of the defense: Standard's having ceased the use of the accused system, no one at Standard was familiar with its operation; that because AFS personnel were familiar with the Standard system they participated in preparation for trial and performed the necessary tests; that decisions were actually made by the attorney in charge of the case, Dana Raymond, and not by AFS. AFS cites one instance in which its judgment or advice was not accepted by the attorney—rather, he overruled AFS' strategy. AFS claims that this demonstrates it could not veto trial decisions of Standard's attorney and, therefore, did not control him. Other AFS evidence discloses that the association of AFS personnel with Dana Raymond was occasioned by Raymond's need for information; that Standard's management was called by Raymond on occasion; that Raymond was the one actually making the decisions.

Also AFS contends Standard did not intend to abandon use of the accused system, and contrary to Ransburg's assertion, was not unconcerned with the outcome of the litigation; that at one time Standard did not intend to use the system but later Standard arranged for AFS to install another system in Mississippi. Finally, AFS claims the dropping of the appeal was done by Standard, that AFS was not informed until the action had been taken by Standard, at a time when AFS could not do anything about it. AFS argues that Ransburg's contention that Standard dropped the appeal because AFS could not provide "sufficient assurances" to Standard and Raymond that the costs of the appeal would be taken care of is a speculative argument. AFS contends many reasons could have motivated Standard's decision.

is sufficiently controverted as to present a question for the court as a fact-finder.

The order of the district court granting summary judgment will be reversed and the case remanded for proceedings not inconsistent with this opinion.