Anna S. FOECKER, Administratrix of
the Estate of Heinz Udo Foecker

v.

ALLIS–CHALMERS et al.

Civ. A. No. 72–1222.

United States District Court,
E. D. Pennsylvania.

Nov. 29, 1973.

G. Clinton Fogwell, Jr., West Chester, Pa., for plaintiff.

Thomas O. Malcolm, West Chester, Pa., John J. O'Brien, Jr., Philadelphia, Pa., Ronald H. Sherr, Norristown, Pa., Charles S. Katz, Jr., Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

BECHTLE, District Judge.

This action was brought by Anna S Foecker, Administratrix of the Estate of Heinz Udo Foecker, on behalf of said estate, seeking damages sustained when Heinz Udo Foecker died on June 29, 1970, as the result of injuries sustained in an industrial accident which occurred on June 27, 1970.

At the time of this accident, Foecker was working for National Rolling Mills, third-party defendant herein, on a temper mill. This is a huge machine through which sheet steel is passed to give it cold working properties so that when the steel is shaped or formed it does not crack. The steel is brought to the temper mill in the form of large coils of sheet steel. In order to prepare the steel for passage through the temper mill, it is placed on carts and moved into position on a reel from which it is fed through the mill. This reel upon which the steel is placed before passing through the mill is referred to as a "payoff reel." After passing through the temper mill, the steel is again wound up in coils on the other side of the mill.

The complaint alleges that while Foecker was working on the payoff reel side of the temper mill, an electrically operated arm referred to by the plaintiff in the pleadings as a "tailholder" was activated and came down crushing the decedent between the tailholder of the temper mill machine and a large piece of steel which was being pushed by the tailholder onto a reel of the temper mill, causing the injuries which resulted in his death.

Defendants Allis-Chalmers, Waterbury-Farrell Machine Tools ("Waterbury-Farrell"), and D. O. James Company manufactured and supplied to National Rolling Mills, decedent's employer at the time of the fatal accident, various component parts and equipment which were incorporated into the overall temper mill. Pursuant to Fed.R.Civ.P. 56, all three defendants have filed separate motions for summary judgment. In that the respective motions present different questions of law and fact, each must be considered and resolved individually.

With regard to the D. O. James Company ("D. O. James"), the plaintiff alleges that the company failed to provide adequate safety precautions in the design and manufacture of certain gear reducers employed in the temper mill machine. In response to an interrogatory filed upon the plaintiff inquiring as to the facts upon which the allegations of the complaint were based as to D. O. James, the plaintiff answered that "the gear reducers were faultily designed in that adequate precautions were not provided for potential injuries."

Other than general and unsubstantiated assertions of liability based on its failure to provide necessary safety precautions, plaintiff has presented not one item of evidence in support of its allegations against D. O. James. During the course of oral argument heard by the Court on the motions to dismiss, counsel for plaintiff conceded that no argument could be advanced against D. O. James' motion for summary judgment.

Furthermore, in the deposition of Frank B. Martin ("Martin"), the Chief Engineer of National Rolling Mills, he testified that although the tailholder [1] was affixed to the D. O. James gear box, the gear box had nothing whatsoever to do with the operation or control of the tailholder. Martin also testified to the fact that the gear reducers did not in any way supply power or in any way activate the tailholder which crushed the

---

1. Mr. Martin referred to the tailholder as a "power hold-down arm" throughout the deposition. The tailholder or power hold-down arm are one and the same.

decedent. Plaintiff has not disputed or contradicted this testimony.

Fed.R.Civ.P. 56(c) provides that summary judgment may be rendered "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Ransburg Electro-Coating Corp. v. Lansdale Finishers, Inc., 484 F.2d 1037 (3rd Cir. 1973); Myers v. Nailon, Civil Action No. 70–592 (E.D.Pa.1973).

■ This Court is of the opinion that there remains no genuine issue of material facts as to the mechanical relationship of the D. O. James gear reducer and the instrumentality that caused the fatal accident and, as a matter of law, D. O. James cannot be held responsible for the death of Heinz Udo Foecker. Accordingly, the motion of D. O. James for summary judgment must be granted.

Defendant Allis-Chalmers designed and manufactured an electrical switchboard (also referred to as the upper control panel) which controls the operation of the temper mill. Plaintiff contends that Allis-Chalmers failed to provide adequate safety precautions in the manufacture of the control panel in that the design and operation of said controls exposed employees of National Rolling Mills, particularly the deceased Foecker, to unnecessary dangers of which they could not be aware. The complaint also alleges that defendant Allis-Chalmers is liable to the plaintiff on the theory of strict liability in tort and for negligence by reason of the manufacturer's failure to make reasonable inspection to discover defects in the design manufacture of the electrical control panel.

In an affidavit submitted pursuant to Fed.R.Civ.P. 56(e), plaintiff's affiant states that no provision was made by Allis-Chalmers on the control panel for safety devices necessary to protect human beings and that there should have been inscribed on the panel an explicit warning "not to tamper with the circuitry" as manufactured by Allis-Chalmers.

■ It is well established that the lack of proper safety devices can constitute a defective design for which there may be recovery under § 402(a) of the Restatement of Torts 2d. Ford v. Harnischfeger, 365 F.Supp. 602 (E.D.Pa. 1973); Dorsey v. Yoder Company, 331 F.Supp. 753 (E.D.Pa.1971); Bartkewich v. Billinger, 432 Pa. 351, 247 A.2d 603 (1968). However, this rule only applies to allow recovery where the absence of the safety device caused an accidental injury which was of the type that could be expected from the normal use of that product. Bartkewich v. Billinger, *supra*, at p. 354, 247 A.2d 603.

As indicated above, Allis-Chalmers did in fact manufacture and supply to National Rolling Mills the electric switchboard which was installed in the temper mill. According to the testimony of the Chief Engineer of National Rolling Mills, this main control panel was located on the temper mill approximately six feet above the floor line. Martin also testified that at the time of installation the controls on the main control panel could not be operated from the floor level. This fact is of crucial importance, for uncontradicted evidence indicates that the portion of the machinery which caused the decedent's injuries and death was activated by the lower control panel installed by National Rolling Mills. This lower control panel, also referred to as the pushbutton station, was designed and installed by employees of National Rolling Mills so that the tailholder could be operated from the ground level.

Interestingly enough, plaintiff's affiant made this observation:

"Subsequently the button was removed, and another control panel (the lower control panel) was installed, assembled, designed, and manufactured by National Rolling Mills. This panel operated the hold-down arm which crushed Heinz Foecker between it and the pay-off reel." (Emphasis added.)

In regard to the installation of the lower control panel, the Chief Engineer of National Rolling Mills testified that, contrary to company policy, no approval

was ever obtained from the Engineering Department for the pushbutton station which was installed by the Maintenance Department of National Rolling Mills. In fact, the pushbutton which activated the tailholder was removed from the lower control panel at the direction of the Chief Engineer on June 28, 1970, the day following the accident.

The pushbutton station was neither supplied nor installed by Allis-Chalmers. It was not a part of the original installation of the main electric switchboard. There has been no evidence introduced to indicate a malfunction of the main control panel installed by Allis-Chalmers. Indeed, this equipment was not even remotely connected with the activation of the tailholder which crushed the decedent against the large piece of sheet steel.

The reasoning and decision in the *Bartkewich* case precludes recovery by the plaintiff against Allis-Chalmers for failure to provide proper safety devices. The failure to provide safety devices may serve as a basis for recovery only where such failure causes an "accidental injury which was of the type that could be expected from the normal use of that product." Bartkewich v. Bellinger, *supra* at p. 354, 247 A.2d at p. 605. It has been established beyond doubt that the decedent's injury and death was not caused by the normal and expected use of the electric switchboard supplied by Allis-Chalmers. Rather, this accident was caused by the altering of the circuitry in the main switchboard and the installation by National Rolling Mills' employees of the lower pushbutton station in a location where such pushbutton would be vulnerable to unintentional, inadvertent activation, as was the case herein.

■ Plaintiff further contends that Allis-Chalmers had a duty to place on the main control panel an explicit warning that there should be "no tampering with this circuitry." This contention is completely unfounded. The duty to warn unquestionably rests upon the foreseeability of the danger or the risk involved in the use of the manufactured product. Posey v. Clark Equipment Company, 409 F.2d 560 (7th Cir. 1969); 1 Frumer & Friedman, Products Liability § 8.03 (1973). In Pennsylvania, one who supplies a product to another and knows or should know that the foreseeable use is dangerous to human life unless certain precautions are taken is under a duty to warn the user of such consequences and to advise proper precautions. Pritchard v. Liggett & Myers Tobacco Company, 295 F.2d 292 (3rd Cir. 1961); Hopkins v. E. I. Du Pont De Nemours & Co., 199 F.2d 930 (3rd Cir. 1953).

The foreseeable, anticipated use of the electric switchboard was not dangerous to human life. There was nothing inherently dangerous in the operation of the upper control panel as it was originally installed by Allis-Chalmers. Consequently, the duty to warn was not present. The dangerous condition did not arise until the electrical system was altered to provide for the installation of the lower control panel. Allis-Chalmers cannot be held responsible for this endeavor. See, Dorsey v. Yoder Company, *supra*.

■ There being no genuine issue of material fact relative to the proximate causation of the fatal accident, this Court is of the opinion that the defendant is entitled to summary judgment as a matter of law.

■ Defendant Waterbury-Farrell has also filed a motion for summary judgment pursuant to Fed.R.Civ.P. 56. The complaint alleges that the temper mill machine was designed and manufactured by Waterbury-Farrell, who negligently failed to provide adequate safety precautions in the manufacture and design of said mill. In response to interrogatories filed by the defendant, plaintiff further asserted that Waterbury-Farrell knew or should have known that electric switchboard, gear reducers and other various apparatus would be attached to their machinery in the course

of business. Based on this knowledge, plaintiff argues, the defendant should have designed and installed appropriate safety mechanisms, such as (1) a seeing-eye electrical-trip device which would have prevented the tailholder from engaging when an individual was in the danger area; (2) a foot treddle or plate in the flooring beneath the tailholder and reel; and (3) a manual electric switch which would have enabled an individual in the area of the tailholder to snap the switch and prevent movement of the mill.

Defendant Waterbury-Farrell admits that it manufactured and supplied the basic mill. However, the defendant alleges that the overall temper mill was designed and installed by National Rolling Mills, that National Rolling Mills designed and installed the auxiliary equipment, such as the payoff reel and tailholder, and that safety equipment and safety systems were the sole responsibility of the decedent's employer, National Rolling Mills.

The Court is convinced that as to defendant Waterbury-Farrell genuine issues of material fact remain to be resolved; specifically, the exact relationship of the basic mill, in terms of function and operation, to the various component parts of the overall temper mill. Dispute also remains as to who actually designed the temper mill—National Rolling Mills or defendant Waterbury-Farrell.

In light of the above, the Court is unable to state as a matter of law that Waterbury-Farrell was not responsible for the installation of effective safety mechanisms on the temper mill. Similarly, the Court is presently unwilling and unable to hold that the absence of such safety devices resulted in an unreasonably dangerous product.

Accordingly, the motion of Waterbury-Farrell for summary judgment must be denied.