550 F.2d 543
 HANDI INVESTMENT COMPANY, Robert M. Fridlund, Richard E.
Fridlund, Everette H. Neal, Barbara Fridlund,
Loretta Fridlund, and Patricia Neal,
Plaintiffs-Appellants,
v.
MOBIL OIL CORPORATION, Defendant-Appellee.
 No. 75-1284.
 United States Court of Appeals,
Ninth Circuit.
 March 24, 1977.
 
 G. Joseph Bertain, Jr., Timothy H. Fine, argued, W. Thomas Amen, San Francisco, Cal., for plaintiffs-appellants.
 Jack D. Fudge, argued, McCutchen, Black, Berleger & Shea, Los Angeles, Cal., for defendant-appellee.
 Appeal from the United States District Court for the Eastern District of California.
 Before CHAMBERS and WALLACE, Circuit Judges, and CRARY, District judge.*
 PER CURIAM:
 
 
 1
 Plaintiffs-appellants, Handi Investment Company (Handi) and the individual partners in that company and their wives, appeal from the summary judgment entered herein in favor of the defendant-appellee, Mobil Oil Corporation (Mobil). As stated by Handi, the law suit involves one cause of action for usury under Article XX, § 22, of the California Constitution, and § 1916 of the California Civil Code.
 
 
 2
 Jurisdiction in the District Court is founded on diversity, Title 28, U.S.C. § 1332(a). Plaintiff Handi owns a retail gasoline station and car wash in Fresno, California, selling Mobil gasoline. In September, 1969, as an inducement to purchase of the service station by appellants, Mobil loaned them $60,000 at 81/2% interest and granted them a "competitive allowance" of 1.9 cents per gallon of the posted "dealer tankwagon price" of gasoline. The competitive allowance agreement provided, "This allowance may be changed or discontinued by us at any time by notice to you (plaintiffs) in writing."
 
 
 3
 In September, 1971, Handi applied to Mobil for a refinancing of the loan. Mobil initially rejected the application but on January 21, 1972, it did re-finance the loan and note of that date was executed by the appellants in the amount of $60,000 with interest at 8% per annum. Concurrent with the execution of the note, appellants entered into a written Retail Dealer Contract with Mobil for the purchase of gasoline and the competitive allowance was reduced from 1.9 cents per gallon to between 1.75 and 1.0 cents per gallon, depending on the volume of gasoline purchased. The refinancing escrow did not close until May 22, 1972, and the reduced competitive allowance took effect June 1, 1972. Effective July 1, 1973, the competitive allowance was reduced by Mobil to 0.5 of a cent per gallon.
 
 
 4
 The agreement for sale and purchase of gasoline between Mobil and appellants provided, in paragraph 3 thereof, as to the gasoline sale price to which the parties agreed, that "Prices . . . shall be those posted or listed by Seller (Mobil) at time and for place of delivery for that class of customers in which Buyer shall then fall." The prices specified in paragraph 3 are those that Mobil customarily charges all of its retail gasoline dealers. The said purchase and sale agreement is a standard "Retail Dealer Contract" uniformly used by Mobil since 1970. The price of gasoline sold under these contracts is the "Dealer Tankwagon price" which is posted in the respective distribution terminals of Mobil. Seventy per cent of all Mobil sales of gasoline during the past 10 years were made at the posted dealer tankwagon price. The only sales to retail dealers not at the posted tankwagon price were those to dealers receiving a competitive allowance, such as appellants.
 
 
 5
 It is the appellants' contention that if the additional income from the reduction of Handi's competitive allowance from 1.9 to 0.5 can be construed as interest on the loan, then the yearly interest rate would be in excess of 10% and usurious. Appellants argue that Mobil intended to evade the California usury laws in its 1972 loan to Handi through the device of reducing Handi's competitive allowance with the intent to collect a usurious rate of interest.
 
 
 6
 Appellants' opposition to Mobil's motion for summary judgment was in the form of their verified complaint and the affidavit of their counsel which concerned the need for further discovery.
 
 
 7
 The chief question before this Court is whether there is a genuine issue as to a material fact involved in this case, to wit, the intent of Mobil in lowering the competitive allowance.
 
 
 8
 It is well established that the mere fact a party may have been required to enter into an unprofitable contract as a condition to a loan of money would not in itself make the loan usurious. The Supreme Court of California, after announcing that rule in Terry Trading Corp. v. Barsky, 210 Cal. 428, 292 P. 474, 475-76 (1930), goes on to say:
 
 
 9
 "On the other hand, the law would be violated if the lender provided for a lawful rate of interest in the note itself, but required additional and excessive interest by the terms of a collateral agreement. Nor would it make any difference that the additional and excessive amounts of interest were designated as payments for services or materials furnished by the lender or his agent, if they were actually intended as interest. The test is whether there was intent to evade the law, and the circumstances and negotiations which preceded the transaction may be material in determining such intent." (Citations omitted.)
 
 
 10
 Whether a particular transaction is usurious involves a question of fact. The California Court of Appeals in Janisse v. Winston Investment Company, 154 Cal.App.2d 580, 317 P.2d 48 (1957) at page 50 of its opinion, states:
 
 
 11
 "Where the form of the transaction makes it appear to be non-usurious, it is for the the trier of the fact to determine whether the intent of the contracting parties was that disclosed by the form adopted, or whether such form was a mere sham and subterfuge to cover up a usurious transaction." (Citations omitted.)
 
 
 12
 It is apparent from the opinions in Janisse v. Winston Inv. Co., supra, and Terry Trading Corp. v. Barsky, supra, that intent is also a question of fact.
 
 
 13
 If the uncontroverted facts in the case at bench disclose that the transactions was not usurious as a matter of law then, of course, we do not reach the issue as to intent.
 
 
 14
 In paragraph 4 of the District Court's Conclusions of Law it states:
 
 
 15
 "4. Even if the loan were not merely incidental to the Retail Dealer Contract, this contract cannot be found to contain hidden interest charges unless the price paid for the gasoline was grossly excessive. The price plaintiffs paid was not in excess of Mobil's dealer tankwagon price, which is the price customarily charged to Mobil retail dealers in Southern California. This precludes any findings that the price was excessive."
 
 
 16
 After reviewing the cases cited by appellee on this issue, we conclude that, although the fact that the price of the goods in the collateral sales agreement is not grossly excessive is a material and important fact to be considered in determining the question of whether usury may be involved, it is not a bar, as a matter of law, to the consideration by the trier of the facts of any other facts in the case that may be elucidative as to that issue.
 
 
 17
 The fact that a borrower is required to purchase property from a lender at a price in excess of the value thereof may well render the loan transaction usurious but the fact the purchase price is not excessive, we conclude, does not, per se, bar further consideration of the issue of intent with respect to the lowering of the purchase price as it may affect the over-all transaction. Martyn v. Leslie, 137 Cal.App.2d 41, 290 P.2d 58, 65 (1955); Niles v. Kavanagh, 179 Cal. 98, 175 P. 462, 463-64 (1918).
 
 
 18
 The Supreme Court of California in Niles v. Kavanagh, supra, after observing that even where the lender insurance company requires, as a consideration of making a loan at full legal interest rate, that the borrower take out insurance with it, stated:
 
 
 19
 ". . . the loan is not to be deemed usurious in the absence of evidence that the premium is in excess of the usual fair rate for insurance, or that in some other respect the provision for insurance was designed as a cover for unlawful interest." (Emphasis added.)
 
 
 20
 In Freedom Oil Works Company v. Williams, 302 Pa. 51, 152 A. 741 (1930), cited by Mobil, the defendant obtained a loan from plaintiff at lawful interest rates. The defendant was required to lease certain equipment from plaintiff and to purchase all gasoline required exclusively from plaintiff for a minimum of three years or until the loan was paid. The defendant contended that the collateral agreement was invalid on the grounds that the exclusive dealing contract was on terms unfavorable and constituted hidden intent making the original loan usurious. The Supreme Court of Pennsylvania held that the contract was complete, mutual and sustained by ample consideration, stating:
 
 
 21
 "The mere fact that one who loans money with interest is induced to do so by an independent contract relating to collateral matters does not render the loan usurious, even though the borrower would not have entered into the collateral contract, except on condition that the loan be granted. A loan is not necessarily usurious by reason of its constituting part of an agreement between the parties which they regard as mutually beneficial and to which the loan is merely incidental. . . . Of course, if a usurious intent is shown, the transaction is illegal." (Emphasis added.) 152 A. at 743.
 
 
 22
 The Court concludes that the loan in the case at bench was not incidental to the Retail Dealer Contract involved.
 
 GENUINE ISSUES AS TO MATERIAL FACTS
 
 23
 Although the factual situation as disclosed by the pleadings and affidavits, together with the authorities, discussed and argued at the hearing of Mobil's motion for summary judgment and on this appeal, may indicate that there is substantial evidence to support the position of Mobil, we must determine the basic issues: (a) Is there a genuine issue as to any material fact, and (b) is the appellee Mobil entitled to judgment as a matter of law.
 
 
 24
 Although the facts as outlined in the affidavits filed by Mobil are persuasive as to its fair use of the competitive allowance and as to other fairness of Mobil in its pricing of gasoline to retail dealers, the case is left with the issue of intent in the lowering of the competitive allowance when the note was renewed. Was it the intent of Mobil, in so lowering the competitive allowance, to increase the interest rate on the renewal note from 8% to a usurious rate? The rule is well established that summary judgment is proper only where there is no genuine issue of any material fact or where, viewing the evidence and inferences which may be drawn therefrom in light most favorable to the adverse party, the movant is clearly entitled to prevail as a matter of law. Stansifer v. Chrysler Motors Corp., 487 F.2d 59, 63 (9th Cir. 1973).
 
 
 25
 The Court of Appeals, 3rd Circuit, in Ransburg Electro-Coating Corp. v. Lansdale Finishers, Inc., et al., 484 F.2d 1037, in commenting on the summary judgment proceedings in that case, observes at page 1039:
 
 
 26
 "Although the evidence adduced in the summary judgment proceedings seems heavily weighted in favor of Ransburg, preponderance of the evidence is not the test in a summary judgment proceeding; rather the test is whether a genuine issue of material fact remains after examination of pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits."
 
 
 27
 Mobil points up the need for the competitive allowance it gave to a minority of its dealers and the voluntariness on its part in making it available. It states in its affidavits that the lowering of the allowance in appellants' case was due to changing circumstances and competitive conditions.
 
 
 28
 Appellants urge that Mobil's intent to realize a usurious rate of interest is manifest by, among other facts, (a) the admission of a Mobil employee, Ripke, that Mobil circumvents the legal interest limit on loans by lowering the borrowers competitive allowance, (b) no affidavits re need for a competitive allowance were required by Mobil in 1972 when the loan was renewed as was the case in 1969 when the first loan was made, (c) the contemporaneous preparation of the loan papers and the reduction of the competitive allowance in January, 1972, and (d) the delay in making the loan resulted in the same delay in the reduction of the competitive allowance. The refinancing escrow closed on May 22, 1972, and the reduction of the competitive allowance became effective on June 1, 1972.
 
 
 29
 The burden is on the movant Mobil to establish grounds for summary judgment and, as stated by this Court in Consolidated Electric Co. v. United States of America for Use and Benefit of Gough Industries, Inc., 355 F.2d 437, at 438,
 
 
 30
 "When an issue requires determination of state of mind, it is unusual that disposition may be made by summary judgment. (Authorities omitted.) It is important, and ordinarily essential, that the trier of fact be afforded the opportunity to observe the demeanor, during direct and cross-examination, of a witness whose subjective motive is at issue."
 
 APPELLANTS' DISCOVERY AND THE PROTECTIVE ORDER
 
 31
 It is Mobil's position that the protective order, which made it unnecessary for it to answer the interrogatories filed by appellants on October 21, 1974, was properly issued by the District Court because the discovery sought had nothing to do with the summary judgment, in that the judgment was granted on the Court's conclusion that, as a matter of law, there could be no usury unless plaintiffs-appellants showed that they paid grossly excessive prices for Mobil gasoline after reduction of the competitive allowance in 1972 when the note was refinanced.
 
 
 32
 Appellants' discovery was sought under Rule 26(b)(1) of the Federal Rules of Civil Procedure and the protective order was issued under the authority of Rule 26(c)(1) and on the ground that the price of gasoline sold by Mobil to appellants was not excessive.
 
 
 33
 Appellants also sought a continuance of the hearing on the motion for summary judgment under the provisions of Rule 56(f), Federal Rules of Civil Procedure, on the grounds that necessary affidavits were unavailable. That motion was denied and the protective order and summary judgment were issued simultaneously.
 
 
 34
 By reason of our holding that failure of Mobil to charge an excessive price for the gasoline sold to appellants was not, per se, a bar to the appellants offering evidence of intent as to possible usury, the discovery would not, on that ground, be precluded.
 
 
 35
 It would appear from Mr. Hotaling's affidavit, offered by Mobil, that some 30% of its dealers receive competitive allowances since he stated that about 70% pay the posted dealer tankwagon price. Whether all dealers receiving competitive allowances also have loans from Mobil and, if so, what relation, if any, there may be between loans and competitive allowances as to Mobil's customers generally, might well be relevant to the issues here involved.
 
 
 36
 We conclude that the protective order should be vacated and the appellants allowed further discovery.
 
 
 37
 In holding that appellants have a right to further discovery we do not express any opinion as to which of the appellants' interrogatories should be answered. That is a matter for the discretion of the District Court, having in mind the rulings herein.
 
 
 38
 The summary judgment is ordered reversed and the case is remanded for further proceedings.
 
 
 
 *
 Honorable E. Avery Crary, Senior United States District Judge, Central District of California, sitting by designation