**SABER, Bertram and B & E Productions, Inc.**

v.

**FINANCEAMERICA CREDIT CORP., Melvin Rubin, Esq., United States and U.S. Marshal Joseph Bennett, and Barry Frost.**

**Appeal of FINANCEAMERICA CREDIT CORPORATION and Melvin Rubin, Esquire.**

**No. 87–1249.**

United States Court of Appeals, Third Circuit.

Argued Oct. 26, 1987.

Decided March 31, 1988.

---

Gordon W. Gerber (argued), Dechert, Price & Rhoads, Philadelphia, Pa., for appellants.

Theodore C. Forrence, Jr. (argued), Herbert Monheit, Law Offices of Herbert Monheit, Philadelphia, Pa., for appellees.

Before HIGGINBOTHAM, HUTCHINSON and SCIRICA, Circuit Judges.

### OPINION OF THE COURT

A. LEON HIGGINBOTHAM, Jr., Circuit Judge.

Defendants FinanceAmerica Credit Corporation ("FACC") and Melvin Rubin, Esq. ("Rubin"), appeal from the district court's order granting the motion of plaintiffs Bertram Saber ("Saber") and B & E Productions, Inc. ("B & E"), to enforce a settlement agreement. The order deals with only one of plaintiffs' two claims. The district court's order dismissed with preju-

dice Saber's personal injury claim against FACC and Rubin, and it ordered defendants to pay $35,000 plus interest, costs and attorney's fees to the plaintiffs within twenty-one days of the date on which the order was entered. On appeal, FACC and Rubin assert: (i) that the settlement order is invalid, principally because they did not authorize their lawyer, who was retained by FACC's insurance carrier, to enter into a partial settlement; and (ii) that the award of attorney fees is inappropriate, regardless of the validity of the settlement. Saber and B & E assert that the district court's order is interlocutory and unappealable. Because we conclude that we are without appellate jurisdiction over the district court's order, we will dismiss the appeal.

## I. BACKGROUND

### A. *Underlying Facts*

On February 17, 1979, two United States marshals, acting under a writ of execution issued by the United States District Court for the District of New Jersey, seized $54,366 in admission ticket proceeds from the box office of the Atlantic City Convention Hall. FACC had obtained the writ based on a judgment against its debtor, Kruse Classic Auction Co., Inc. ("Kruse"). Kruse was conducting an automobile auction in the Convention Hall. B & E had leased the hall to put on an annual auto show, in which Kruse was one of the participants. B & E sold the admission tickets. On February 22, 1979, B & E filed a federal

diversity action against FACC, seeking the return of the seized funds as well as compensatory and punitive damages in excess of $50,000. B & E's complaint alleged that it had merely sublet a portion of the hall to Kruse, and that Kruse had no interest in or right to the admission ticket proceeds.

Saber, the manager of B & E, subsequently joined this action as a plaintiff, asserting a personal injury claim against FACC and its attorney, Rubin, who was added as a defendant. Saber's personal injury claim against Rubin stems from events surrounding the marshals' seizure of the funds at the Convention Hall box office. Although Rubin was also named as a defendant for purposes of B & E's seized funds claim, the basis for his alleged liability on that claim is not explained on the record. With the joinder of Saber and Rubin as parties, the suit acquired an atypical structure, albeit one not prohibited by Fed.R.Civ.P. 20.[1] In a single action, B & E is suing FACC and Rubin for return of the seized funds, and Saber is suing FACC and Rubin for damages resulting from personal injury. B & E and Saber have no common claim, and the sole claim covered by the alleged settlement at issue on this appeal is Saber's claim.[2]

### B. *The Settlement Dispute*

The settlement dispute originated in negotiations between plaintiffs' and defendants' attorneys in February, 1984. Counsel for plaintiffs was Cornelius Van Galen.

---

**1.** Rule 20 governs

(a) Permissive Joinder. All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action.... A plaintiff or defendant need not be interested in obtaining or defending against all the relief demanded. Judgment may be given for one or more of the plaintiffs according to their respective rights to relief, and against one or more defendants according to their respective liabilities.

Fed.R.Civ.P. 20.

**2.** B & E and Saber, in addition to suing FACC and Rubin, also asserted claims against the

United States and the two marshals who seized the box office proceeds. In conjunction with these claims, the plaintiffs moved to transfer the lawsuit to the Eastern District of Pennsylvania, on the grounds that the New Jersey district court judge who gave instructions to the marshals during the seizure might be required to appear as a witness in the case. After the case was transferred, B & E and Saber withdrew their claims against the United States and the marshals. On appeal, the plaintiffs contend that this Court should direct the district court to transfer the case back to the District of New Jersey, since the reason for the initial transfer no longer obtains. Because we lack jurisdiction to review the district court's order, we do not consider the transfer issue.

Counsel for defendants was James Franklin, who was retained by FACC's liability insurance carrier, Truck Insurance Exchange.[3] As FACC's agent, legal representative and co-defendant, Rubin apparently was entitled to coverage under FACC's policy on Saber's personal injury claim. Although the policy apparently did not cover the claim of wrongful seizure of funds,[4] Franklin undertook the defense of both Saber's and B & E's claims.

On February 17, 1979, the $54,366 seized in execution of FACC's judgment against Kruse was deposited with the district court. On February 28, 1984, attorneys Van Galen and Franklin began to discuss the possibility of dealing separately with the two claims. In mid-March, Franklin obtained authority from Truck Insurance Exchange to offer $35,000 in settlement of the personal injury claim. Franklin communicated this offer to Van Galen, who purported to accept on behalf of his clients. Van Galen then confirmed the terms of the settlement in a letter to Franklin dated March 21, 1984. The following day, in a pre-trial conference, the two attorneys reported their agreement to the district court.

Immediately after this conference, Franklin met with Rubin and reported what had occurred. Rubin told Franklin that neither Rubin nor FACC had consented, nor would they consent, to a settlement that addressed only the personal injury claim. Franklin notified Van Galen that Rubin and FACC had not consented to the settlement. Franklin explained that he viewed himself as having a conflict of interest between his obligations to the insurance company and his obligations to FACC and Rubin, and announced that he could no longer represent them in this matter. On March 23, 1984, Franklin telephoned the district judge's chambers to set up a meeting to discuss the problem. On the same day, Van Galen filed the motion to enforce the settlement agreement.[5]

Rubin and FACC opposed the plaintiffs' motion on two grounds. They claimed, first, that Franklin did not have the authority to enter into a partial settlement since they had not consented. Second, they claimed that the attorneys had not reached an agreement on all of the material terms. The district court formulated the first issue as whether, under Pennsylvania law, Franklin's actions as a lawyer retained by an insurance company were binding on his clients, FACC and Rubin. The district court reasoned that "if, pursuant to an agreement between defendants and [Truck Insurance Exchange], [Truck Insurance Exchange] was granted authority to represent defendants in any settlement negotiations and to enter into a settlement of the personal injury aspect of the case on their behalf, then defendants would be bound by the acts of [their] agent, [Truck Insurance Exchange]." *Saber v. FinanceAmerica Credit Corp.*, Civil No. 81–2873, mem. at 6 (E.D.Pa. Jan. 31, 1986) [available on WESTLAW, 1986 WL 1553]. For this rationale, the district court relied on *Limmer v. Country Belle Coop. Farmers*, 61 Pa.D. & C.2d 109 (1972), which held that an insurer was bound by the acts of its employee

---

3. In their briefs to this Court, the parties refer to FACC's insurance carrier as Truck Insurance Exchange. The district court order refers to the carrier as the Farmers Insurance Company. For the sake of consistency, this opinion uses only the name "Truck Insurance Exchange."

4. Paragraph I of the Insurance Agreement contains the following language:
   The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this policy applies caused by an occurrence, or personal injury, or malpractice injury and the company shall have the right and duty to defend any suit against the insured

seeking damages on account of such injury or damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient....
Joint Appendix at 177.

5. Settlement agreements may be enforced by means of a motion filed with the underlying cause of action and need not be asserted in the form of a complaint and answer. *Gross v. Penn Mutual Life Ins. Co.*, 396 F.Supp. 373, 374 (E.D. Pa.1975); *accord Kelly v. Greer*, 365 F.2d 669, 671 (3d Cir.1966) (district court has "power to summarily enforce settlement agreements entered into with its approval").

where the employee, a claims agent, acted improperly in giving the insurer's attorney express authority to settle the case for a certain amount without first receiving authorization from the insurer's home office. The district court ordered an evidentiary hearing to determine "the nature of the authority, if any at all, granted to [Truck Insurance Exchange] to enter into a settlement agreement on behalf of the defendants and on what terms the alleged settlement was agreed upon or if, in fact, all material terms were even agreed to." *Saber*, Civil No. 81–2873, mem. at 6–7.

The evidentiary hearing was held on March 24, 1986. On April 10, 1987, the district court granted the motion to enforce settlement. The district court found that Truck Insurance Exchange had authority under the policy to represent the defendants in any action in which the defendants are sued for money damages, as well as authority to settle any claim or suit asserted against the defendants in whole or in part. The district court also found that, on March 19, 1984, "the parties, through their duly authorized representatives," entered into a binding agreement whereby the plaintiffs agreed to dismiss Saber's personal injury claim with prejudice in return for $35,000, and that there was no misunderstanding as to these terms.

Based on these factual findings, the district court granted the plaintiffs' motion to enforce the settlement agreement; ordered FACC and Rubin, "through their insurance company or otherwise," to pay to the plaintiffs [6] $35,000, plus appropriate interest, costs and attorney's fees; ordered the defendants to make this payment to the plaintiffs within twenty-one days after the entry of the order; and dismissed Saber's personal injury claim with prejudice. *Saber*, Civil No. 81–2873 (E.D.Pa.Apr. 10, 1987). Judgment was entered on April 13, 1986.

## C. *The Appeal*

FACC and Rubin appeal from the settlement order on four grounds. First, they argue that the district court erred as a matter of law in holding that Franklin had the authority to bind either FACC or Rubin to the settlement agreement. With respect to Rubin, they point out that he was not an insured under the policy and argue that, as FACC's lawyer and agent, he was a third party beneficiary of the policy, entitled but not required to accept the insurer's legal services and unable to be bound by the settlement absent his consent. With respect to FACC, they claim that, as Franklin's client, FACC necessarily has control over the decision to settle and the terms of settlement; they argue that an attorney's authority to settle derives exclusively from the client under the principles of attorney-client relations and the Rules of Professional Responsibility. Viewing the issue of authority in the insurance law context in which it arises here, FACC and Rubin argue strenuously that neither the policy language nor Pennsylvania law permits an insurer, who retains an attorney to defend an insured in a lawsuit involving a covered and an uncovered claim, to authorize that attorney to settle the covered claim while leaving the uncovered claim unsettled when the insured objects to the settlement.

FACC and Rubin's three remaining grounds for appeal derive from the district court's finding that there was mutual assent to all material terms of the settlement, its award of attorney's fees in connection with the motion to enforce settlement, and its issuance of what FACC and Rubin assert is an impermissible mandatory injunction compelling them to comply with the order to pay within twenty-one days of the entry of judgment.

## II. APPEALABILITY

### A. *Rule 54(b) Certification*

■ The Federal Rules of Civil Procedure require a district court directing the entry of judgment as to one or more, but fewer than all, of the claims or parties to make "an express determination that there is no just reason for delay" and to issue "an express direction for the entry of judg-

---

**6.** We note that the district court ordered payment to both plaintiffs, although the settlement agreement resolves only Saber's personal injury claim against FACC and Rubin.

ment." [7]  Fed.R.Civ.P. 54(b). Without this certification, a district court order will not be considered final.[8] In the case before us, the parties did not move for certification. The district court directed entry of judgment, but it did not make an express determination that there is no just reason for delay. While a court of appeals may review a district court's decision to certify an appeal for abuse of discretion, it ordinarily has no jurisdiction to review on an interlocutory basis a district court's failure to certify a case for review. Absent an alternative basis for appellate review, then, we must dismiss FACC and Rubin's appeal for lack of jurisdiction.[9]

### B. *Appealable Interlocutory Orders*

■ Lack of certification by the district court does not obstruct appeals permitted under 28 U.S.C. § 1292(a)(1) (1982), which grants federal appellate courts jurisdiction to review "[i]nterlocutory orders of the district courts of the United States ... or of the judges thereof, granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions"; *accord Lair v. Fauver*, 595 F.2d 911, 912 (3d Cir.1979) (*per curiam*); *Ransburg Electro–Coating Corp. v. Lansdale Finishers, Inc.*, 484 F.2d 1037, 1038 (3d Cir.1973). FACC and Rubin assert that the district court's order that they pay money within twenty-one days constitutes a mandatory injunction. Although the order is unusual, we do not agree that it is an injunction.

FACC and Rubin are appealing from an order enforcing a settlement agreement and requiring them to pay money to plaintiffs within twenty-one days. The settlement agreement itself contains no provision for a consent judgment enforceable by contempt. A settlement agreement is a contract, and an order enforcing a contract is ordinarily described as an order for specific performance. "Unlike an injunction, which can be employed procedurally to preserve rights pending the outcome of the substantive litigation, the remedy of specific performance is, generally speaking, dispositive of the substantive rights of the parties." *United Bonding Ins. Co. v. Stein*, 410 F.2d 483, 486 (3d Cir.1969). The fact that a specific date for compliance is attached to an order for specific performance of the settlement agreement does not by itself transform the enforcement order into a mandatory injunction. Nor is the specific performance order made an injunction merely by inclusion of an order to pay money. The district court ordered the payment of money in response to the alleged settlement of a traditional claim for damages in tort. An award of monetary compensation is a legal remedy and is not transformed into an injunctive remedy merely by a district court's imposition of a

---

7. Rule 54 governs
   (b) Judgment Upon Multiple Claims or Involving Multiple Parties. When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.
   Fed.R.Civ.P. 54.

8. Finality of a district court order is a prerequisite of appellate jurisdiction. "The courts of appeals ... shall have jurisdiction of appeals from all final decisions of the district courts of the United States...." 28 U.S.C. § 1291 (1982).

9. The drafters of Rule 54(b) surely contemplated that "district courts [would] consider Rule 54(b) in deciding whether to award immediate execution or require the immediate delivery of property to an adversary, and enter such orders only after complying with its requirements and expressly determining that there is no just reason for delay." 15 C. Wright & A. Miller, *Federal Practice and Procedure* § 3910, at 464 (1976). The fact that some orders issued in violation of Rule 54(b) may not be subject to immediate appeal does not validate those orders; it merely makes them unappealable *until* the entry of final judgment as to all the issues in the case.

time limit on the defendants' obligation to pay. *Cf. Jaffee v. United States*, 592 F.2d 712, 715 (3d Cir.1979) ("A plaintiff cannot transform a claim for damages into an equitable action by asking for an injunction that orders the payment of money."). We note that this is not a case where an order to pay money was enforced by a contempt citation, and we do not decide here whether an order in such circumstances would be appealable as an injunction for purposes of § 1292(a)(1). This Court has observed that "in some cases the difference between an injunction and specific performance may escape precise definition," *United Bonding*, 410 F.2d at 486, but the line between them is not crossed here.

### C. Appealable Collateral Orders

■ FACC and Rubin also argue that the district court's order comes within the "collateral order" exception to the final judgment rule. *See Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). "To come within the 'small class' of decisions excepted from the final-judgment rule by *Cohen*, the order must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468, 98 S.Ct. 2454, 2458, 57 L.Ed.2d 351 (1978); *accord Gross v. Searle*, 738 F.2d 600, 602 (3d Cir.1984). The order in this case fulfills the first two *Cohen* criteria, but not the third.

The order on appeal "conclusively determine[s] the disputed question"—the validity of the settlement. Its conclusiveness lies in the district court's direction that judgment be entered and its requirement that payment be made within twenty-one days. Because *Cohen* directs us to give § 1291 a "practical rather than a technical construction," 337 U.S. at 546, 69 S.Ct. at 1226, this degree of conclusiveness is sufficient. *See Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 375, 101 S.Ct. 669, 674, 66 L.Ed.2d 571 (1981). The district court's settlement order also "resolve[s] an important issue completely separate from the merits of the action," the second part of the *Cohen* test. The validity of the settlement here is an important legal issue entirely separate from the merits of the personal injury and seized fund claims raised in the complaint in this action.

To be appealable as a collateral order, however, there must also be a showing that denial of immediate review will "render impossible any review whatsoever" since the order will be unreviewable on appeal from final judgment of all issues in the case. *United States v. Ryan*, 402 U.S. 530, 533, 91 S.Ct. 1580, 1582, 29 L.Ed.2d 85 (1971); *accord Firestone Tire & Rubber Co.*, 449 U.S. at 377–78, 101 S.Ct. at 675. FACC and Rubin attempt to show that the challenged order will be effectively unreviewable on appeal from final judgment by arguing that the settlement order incorporates an order to pay money and that, by requiring their compliance long before there may be a final judgment in the case, the district court confronts them with the choice of being in violation of a court order or paying money to Saber and B & E before the case is finally decided. The defendants, however, have made no showing that B & E is insolvent or that the money they have paid may be irretrievable for any other reason should they eventually prevail. They did not move for a stay or reconsideration of the district court's order.[10] Instead of endeavoring in any way to defer payment pending further judicial review, FACC and Rubin simply paid. Under the circumstances, we see no reason why the district court's order would not be fully reviewable on final judgment entered

---

**10.** FACC and Rubin also did not violate the order to pay and permit a contempt citation to be entered against them. We therefore do not address here whether a collateral order for the payment of money in the context of an alleged settlement agreement, enforced by contempt, would be appealable. *See generally Cromaglass Corp. v. Ferm*, 500 F.2d 601, 604 (3d Cir.1974)

(*in banc*) (civil contempt orders not appealable); *Firemen's Fund Ins. Co. v. Myers*, 439 F.2d 834, 838 (3d Cir.1971) (same); *cf. Cobbledick v. United States*, 309 U.S. 323, 60 S.Ct. 540, 84 L.Ed. 783 (1940) (party may take direct appeal from a criminal contempt ruling and challenge it on the merits at that time).

by the district court. *See Firestone Tire and Rubber Co.*, 449 U.S. at 376, 101 S.Ct. at 674. Because appellants have made no showing concerning the third element of the *Cohen* test, the district court's order granting plaintiffs' motion to enforce settlement and requiring defendants to pay $35,000 to plaintiffs does not fall within the "small class" of appealable collateral orders.

### III. ATTORNEY'S FEES

 FACC and Rubin also appeal from the district court's decision to award attorney's fees to B & E and Saber in conjunction with their motion to enforce settlement. The attorney's fees order is not final within the meaning of 28 U.S.C. § 1291 (1982). In *Becton Dickinson & Co. v. District 65, United Auto., Aerospace & Agricultural Implement Workers of Am., AFL-CIO*, 799 F.2d 57, 61 (3d Cir.1986), we reaffirmed our earlier decisions that appeals from awards of attorney's fees may be filed only after the amount of the attorney's fees has been determined by the district court.

### IV. CONCLUSION

For the foregoing reasons, we will dismiss the defendants' appeal and remand the case to the district court.

